McDonald v. Life Ass'n.

McDONALD v. BANKERS LIFE ASSOCIATION OF DES MOINES, IOWA, Appellant.

In Banc, March 5, 1900.

1. **Life Insurance: PROOF OF LOSS: WAIVER.** Where a son of the holder of a certificate of insurance, acting as agent of the beneficiary, notifies the company of the insured's death, and the company replies that it understood the insured committed suicide, and if so it had not agreed to pay anything on account of his death and "therefore did not send proof papers as requested," the answer waives the proof of loss.

2. ————: **WHETHER ASSESSMENT OR OLD LINE COMPANY.** If the amount to be paid upon the death of the insured does not in anywise depend upon the collection of an assessment upon persons holding similar contracts, the company is not an assessment company.

3. ————: ————: **SUICIDE.** The defense of suicide to a suit on a policy of a company which is not an assessment company, can not avail unless it is also alleged that the insured contemplated suicide at the time he applied for the insurance.

4. ————: ————: ————: **PROOF.** It devolves upon the company, where it interposes the defense of suicide, to show that it is an assessment company and that it issues such a policy as an assessment company is authorized by law to issue. And in this case the policy does not show the company to be an assessment company.

5. ————: ————: **SUPERINTENDENT'S CERTIFICATE: POLICY.** The certificate of the State Superintendent of Insurance, authorizing a company to do business as an assessment company, does not determine the character of insurance the company actually does. The policy determines that.

6. **Pleading: LAWS OF ANOTHER STATE: EVIDENCE.** The laws of another State can not be pleaded by chapter only. The terms, tenor or effect of the statute are to be set out. And unless this is done, it can not be read as a defense to a suit.

7. ————: ————: **PRESUMPTION.** Where a policy of a company organized under the laws of another State, is executed and consummated in this State, and such laws are not properly before the court, they will be presumed to be the same as the laws of this State.

McDonald v. Life Ass'n.

8. **Suit on Life Policy:** PLEADING: ARTICLES OF INCORPORATION, ETC. Unless the policy of insurance refer in some manner to the articles of incorporation and the by-laws of the company, they constitute no part of the contract, nor can they be offered in evidence unless they are pleaded, nor can the testimony of an officer of the company as to its character and methods of doing business.

Appeal from Buchanan Circuit Court.—*Hon. James H. Parrish*, Judge.

AFFIRMED.

*O. B. Ayres* and *A. W. Brewster* for appellant.

(1) The trial court erred in overruling the objections of the defendant to the introduction of the letter of L. L. McDonald and the reply of E. E. Clark thereto, because the letters did not tend to prove the making of the proof of the death of Daniel McDonald by the plaintiff, or the waiver of such proof by the defendant association; the making of such proof not being admitted in the pleadings, nor was the death of the insured admitted by the answer. May on Ins. (3 Ed.), secs. 36, 469; Bacon on Ben. Soc. and Life Ins. (2 Ed.), sec. 436. (2) The trial court erred in holding that the plaintiff was entitled to recover without proof of the death of the insured; the plaintiff having alleged in each count of her petition, the death of the insured and the making of the proof of her claim, and the defendant having joined issue with each of these allegations. Northrup v. Mississippi Valley Ins. Co., 47 Mo. 435; 1 Am. & Eng. Ency. of Plead. and Prac., p. 803. (a) Under a general denial the simple inquiry is, has the plaintiff proved what he has alleged in his petition. School Dist. v. Shoemaker, 5 Neb. 36; Jones v. Seward Co., 10 Neb. 154; Dutcher v. Dutcher, 39 Wis. 651; Finley v. Quirk, 9 Minn. 194; Stone v. Quall, 36 Minn. 46; Nichols v. Winfrey, 79 Mo. 544; Ingle v. Jones, 43 Ia. 286; Johnson v. Pennell, 67 Ia. 669. (3) The appellant offered to prove that the insured willfully took his own life. This was clearly

material under the issues in this case.   Secs. 5860, 5872, 5869, R. S. 1889; Handforf v. Mass. Ben. Ass'n, 122 Mo. 50; Theobold v. Supreme Lodge Knights of Pythias, 59 Mo. App. 87; Sparks v. Knights Templars, 61 Mo. App. 109; Scheele v. State Home Lodge, 63 Mo. App. 277.   (4)   The trial court erred in sustaining the plaintiff's objection to the introduction of the articles of incorporation and by-laws of the defendant association for the purpose of showing the manner of its doing business and that it was doing business as an assessment association.   The articles of incorporation and by-laws of a mutual assessment association are binding upon the members and their beneficiaries.   Bacon on Ben. Socs. (2 Ed.), secs. 48, 81, 88, 91, 116, 130; May on Ins. (2 Ed.), secs. 60, 146; 3 Am. and Eng. Ency. of Law (2 Ed.), p. 1048c; Morawetz on Priv. Corps. (2 Ed.), secs. 318, 641, 645, 939; State v. Standard L. Ass'n, 38 Ohio St. 281; Rockhold v. Canton Masonic Mut. Ben. Soc., 129 Ill. 455. (5)   The general laws of the State are, by intendment, considered as having been made a part of the charter of incorporation, unless the contrary is therein expressly provided. Articles of incorporation, under general laws, are always to be taken in connection with the laws of the State determining the status and the powers of the corporation. 3 Am. and Eng. Ency. of Law (2 Ed.), p. 1049d; O'Neill v. Ins. Co., 71 Wis. 621; Supreme Council, etc., v. Perry, 140 Mass. 580.   (a)   A statute enlarging the powers of an association need not be formally adopted by it, but takes effect immediately.   3 Am. and Eng. Ency. of Law (2 Ed.), p. 1049; Citizens' Mut. F. Ins. Co. v. Sortwell, 8 Allen 217; Briggs v. Earl, 139 Mass. 473; Supreme Council, etc., v. Perry, 140 Mass. 580; Elsey v. Odd Fellows Mut. Ben. Relief Ass'n, 142 Mass. 224; Stewart v. Father Mathew Soc., 41 Mich. 69; State v. Citizens' Ben. Ass'n, 6 Mo. App. 163.

*H. K. White* for respondent.

(1)  The Supreme Court will not reverse this case because of the refusal of the court below to permit the Iowa statute to be read in evidence.  First, because appellant has not preserved in the bill of exceptions the act offered by defendant, and the action of the court below will be presumed to have been correct.  Robidoux v. Casselleggi, 81 Mo. 465; Wood v. Norton, 85 Mo. 301; Overholt v. Vieths, 93 Mo. 425; Fitzgerald v. Barker, 96 Mo. 664; State ex rel. v. Leland, 82 Mo. 263.  Second.  Because the act of the state of Iowa should have been set forth in terms and not by reference, or by stating its effect in the opinion of the defendant. Story on Conflict of Laws, paragraph 637; Maxwell on Code Pleading (3 Ed.), p. 89; Bliss on Code Pleading (2 Ed.), par. 287; Morrisy v. Wiggins Ferry Co., 47 Mo. 525; Flato v. Milhall, 72 Mo. 525; Baucher v. Gregory, 9 Mo. App. 104; Myers v. Chicago, etc., Railroad Co., 72 N. W. Rep. 694; Lowrie v. Moore, 48 Pac. Rep. 238; Carey v. Railroad, 5 Ia. 357; Bean v. Briggs, 4 Ia. 494; McCloud v. Railroad, 58 Vt. 727; Sells v. Haggard, 21 Neb. 357; Swamp v. Huffnegel, 111 Ind. 453.  (2)  Under the pleadings in this case and contract of insurance, including the application, the offers to introduce the Iowa statute, the by-laws of the defendant company, and the oral testimony of the witness Ayres, were properly refused.  First.  The answer raised no issue as to the character of the contract sued upon by showing the terms of the contract, and that the payment of the benefit premiums depended upon the collection of assessments upon other persons holding similar contracts.  Under familiar rules of pleading, this was necessary.  R. S. 1889, sec. 2049; Bliss on Code Pleading, sec. 352; Northrup v. Ins. Co., 47 Mo. 443; Kersey v. Garton, 77 Mo. 647.  Second.  The defense of suicide is or is not maintainable according to the nature of the

contract in suit regardless of the form of license issued by
the insurance commissioner, and the contracts sued upon are
not assessment insurance contracts as defined by Missouri
statutes.    R. S. 1889, secs. 5860, 5862, 5865; Hanford v.
Mass. Mut. Ben. Ass'n, 122 Mo. 59; Jacobs v. Life Ass'n of
Omaha, 142 Mo. 58; s. c., 146 Mo. 523; Toomey v. Supreme
Lodge, 147 Mo. 139; s. c., 74 Mo. App. 521; Logan v. The
Fidelity and Casualty Co., 146 Mo. 114; Havens v. Ins. Co.,
123 Mo. 417; Daggs v. Ins. Co., 136 Mo. 382; O'Keife v.
Ins. Co., 140 Mo. 566.    (3)    The letter of plaintiff's agent
requesting blank proofs of loss, and the letter of defendant's
vice-president in reply thereto, constituted a waiver of the
proof required by the policies, and the court did not err in
receiving in evidence and so instructing the jury.    Bliss on
Life Ins. (1 Ed.), secs. 252, 263; Cook on Life Ins., pp. 213,
214; Rippstein v. St. Louis, etc., Co., 57 Mo. 86; Ins. Co. v.
Pendleton, 112 U. S. 709; Dial v. Valley Mutual Ins. Co., 29
S. C. 56; Minsing v. Ins. Co., 36 Mo. App. 602; Maddux v.
German Ins. Co., 39 Mo. App. 198; Jefferson v. Ins. Co.,
69 Mo. App. 126; Nickell v. Ins. Co., 144 Mo. 432; James
v. Ins. Co., 148 Mo. 1.

MARSHALL, J.—This is an action upon two policies
of insurance (called by respondent mere certificates of mem-
bership).

On the 16th of August, 1890, the defendant, an insur-
ance company, organized under the laws of Iowa, as an assess-
ment company, and licensed by the State Superintendent of
Insurance to do business in this State, as such assessment com-
pany, issued to Daniel McDonald two policies, which were

exactly alike except as to number, in words and figures as follows:

"Application No. 15895.                    Certificate No. 17431.

OFFICE OF BANKERS LIFE ASSOCIATION.

Des Moines, Iowa.

CERTIFICATE OF MEMBERSHIP.

"This is to certify, that in consideration of the statements contained in his application, No. 15895, which is made a part of this contract, and the sum of sixty-nine dollars, one Daniel McDonald, by occupation president Merchants Bank, aged 46 years, has this day been admitted to membership in this association, and that in the event of his death, during membership, his beneficiary shall be entitled to a sum of money equal to two per cent of the aggregate amount of the guarantee fund, as may appear by the books of the association on the first day of the month in which the death of such member may occur; provided, that the beneficiary of the deceased member shall not receive over two thousand dollars for this certificate of membership, and the return of the guarantee deposit given by him to the association, amounting to forty-six dollars.

"Upon the failure of the above named member to make any payment due from him to the association at its maturity in January, April, July and October, of each year, his guarantee deposit shall be forfeited, and his membership shall thereupon cease.

"This certificate to become null and void, if death occur from self-destruction, the member being sane or insane, or if the member is or shall become habitually intemperate in the use of intoxicating liquors, chloral, cocaine or opium.

"The amount due under this contract to be paid to Annie S. McDonald at the home office of the association upon satisfactory proof of claim, to be supplied by the beneficiary,

in the event of the death of the beneficiary prior to that of the member, or in case none is named, the benefit then to be payable to the legal representatives of deceased member.

"Witness the signature of the ———— president, countersigned by the secretary and the seal of the association hereto affixed the date above written.

"Edward A. Temple, President.
"A. C. Stilson, Secretary."

The insured committed suicide on the 3d day of September, 1896. At that time he was not in arrears in any manner to the defendant. On the 7th of September, 1896, his son wrote to the defendant saying: "Please forward proof paper to Lee L. McDonald for death of D. McDonald of this city." The defendant answered: "We have your letter of the 7th inst. asking for papers for proof of death of D. McDonald. We are informed that Mr. McDonald took his own life. If that is the fact this association has not promised to pay any sum on account of his death under such circumstances, and we do not send the papers as requested."

Thereupon the plaintiff instituted this suit, counting on each policy separately and upon an averment that the guarantee fund exceeded five hundred thousand dollars, prayed judgment for $2,046 (that being the amount of each policy with the guarantee deposit of forty-six dollars) on each count. It appears from the policy, and also from the pleadings, that the insured paid sixty-nine dollars when the policy was issued and was required to make further payments of a sum not stated, in January, April, July and October every year.

The answer admits the issuance of the policies and asserts its authority to do business under the Iowa law and the certificate of the State Superintendent of Insurance of this State, and then pleads two affirmative defenses to-wit: first, the provision of the policy against suicide and its violation by the

insured; and, second, that no proof of loss was ever furnished to it.

On the trial the plaintiff read in evidence the policies, the applications therefor, the letters to and from the defendant, above set out, concerning the death, and it was then admitted that the letters to defendant were written by the son of the insured acting as agent for the plaintiff, and that the guarantee fund of the association amounted to five hundred thousand dollars. This was the plaintiff's case.

The defendant offered proof to show, first: that the insured had committed suicide, while sane; second, its articles of incorporation and its by-laws; third, the certificate of the State Superintendent of Insurance of this State, permitting it to do business in this State as an assessment company, for years from 1890 to 1896 inclusive; fourth, the laws of Iowa regulating assessment companies; fifth, the testimony of its vice-president to the effect that it complied with the laws of Iowa, and as to its methods of doing business. Upon objection the court excluded all this. Thereupon the circuit court directed a verdict for the plaintiff on each count of the petition, which was so returned by the jury, and judgment entered thereon. After proper steps defendant appealed.

I.

There is no merit in the claim that no proofs of loss were furnished. The letter from the plaintiff's son clearly imparted notice of the death of the insured, but if there was any uncertainty therein, the reply of the defendant cleared it up by saying the defendant understood the insured had committed suicide, and if so the company had not agreed to pay anything on account of his death under such circumstances and therefore it did not send "proof paper for the death of D. McDonald" as requested. The fact that the insured was dead is

conceded and admitted by both parties, and the answer of the defendant clearly waived proof of loss. [Nickell v. Ins. Co., 144 Mo. 420; James v. Ins. Co., 148 Mo. 1.]

## II.

The crucial question in the case is whether the defendant is an assessment or an old-line insurance company. If it is the former, then section 5855, R. S. 1889, does not apply, the terms of the policy against suicide control and the defendant is not liable. [Hanford v. Ins. Co., 122 Mo. 50; Aloe v. Ins. Co., not yet reported.] If the latter, then that section applies, and as the answer does not aver that the assured contemplated suicide at the time he made application for insurance there is no valid defense interposed, and the judgment is right. The character of the contract determines this question. [Toomey v. Supreme Lodge Knights of Pythias, 147 Mo. l. c. 139; Logan v. Ins. Co., 146 Mo. 114.]

The policy recites that in consideration of the sum of sixty-nine dollars the insured is admitted to membership, and in the event of his death the defendant agrees to pay his beneficiary *"a sum of money equal to two per cent of the aggregate amount of the guarantee fund,"* to be determined by the books of the company as of the first of the month in which the death occurred, provided the amount to be paid shall not exceed two thousand dollars, and also to return "the guarantee deposit given by him to the association amounting to forty-six dollars." The policy then provides, "Upon the failure of the above named member to make any payment due from him to the association at its maturity in January, April, July and October, of each year, his guarantee deposit shall be forfeited, and his membership shall thereupon cease."

These are the whole provisions of the policy bearing upon the character of the defendant company, and this case is without precedent or parallel as to the nature of the policy

or the character of the company as shown by the policy.

The sum of sixty-nine dollars is shown to have been paid when the policy was issued, as a consideration for issuing the policy; the sum of forty-six dollars is shown to have been deposited as a guarantee, for some purpose not disclosed, payments, of a sum not specified, are required to be made quarterly, and the company agrees to pay a sum equal to two per cent of the aggregate amount of the guarantee fund, not to exceed, however, two thousand dollars in any event, upon the death of the assured.   For lack of perspicuity the contract easily takes the first place among the many cleverly designed documents intended to produce confusion and to leave loop holes for escape from liability from the consequences of having taken premiums as long as the assured lived.

It is not clear whether sixty-nine dollars is to be paid every quarter, or whether that is the yearly payment divided into quarterly payments.   It is clear that some amount in addition to the sixty-nine dollars and the forty-six dollars paid and deposited when the policy was issued, is required to be paid quarterly.   But it does not appear that any amount is to be gauged by the amount assessed against other persons similarly situated.   The only reading of the required quarterly payments that is possible from the face of the policy is that it calls for a fixed or artificial premium, and section 5865, Revised Statutes 1889, prohibits assessment companies from charging such premiums.   Upon the principles of *id certum est quod reddi certum potest*, the amount to be paid in case of death is fixed.   Such amount does not depend in any manner upon the collection of an assessment upon persons holding similar contracts, and that is the test under our statutes whether or not a company is an assessment company. [Jacobs v. Ins. Co., 142 Mo. 59; s. c., 146 Mo. 523; Logan v. Ins. Co., 146 Mo. 114; Toomey v. Supreme Lodge Knights of Pythias, 147 Mo. l. c. 138; Aloe v. Ins. Co., not yet reported.] Measured by these rules this company, so far as the face of the

contract shows, is not an assessment company, and hence section 5855, Revised Statutes 1889, applies, and as the defendant has not attempted to show, as that section requires when the defense of suicide is interposed, that the insured contemplated suicide when he applied for insurance, there has been no valid defense pleaded, and the defendant is liable.

For it devolves upon the defendant to show not only that it is an assessment company, but that the policy as issued is such a policy as an assessment company is authorized to issue, otherwise it is bound by its contract, and is estopped to plead that the contract is *ultra vires*.

The defendant realized this, for it attempted to plead the Iowa law and did plead the certificate of the State Superintendent of Insurance of Missouri, authorizing it to do business as an assessment company. But the certificate does not determine the character of insurance the defendant actually issues. It determines only the character of business it was licensed to do; the policy settles the class to which the defendant actually belongs.

The laws of Iowa were not properly pleaded (the chapter of the Revised Statutes of Iowa is referred to only by number—its terms, tenor or effect are not set out) and therefore their reading on the trial was properly excluded. [Morrissey v. Wiggins Ferry Co., 47 Mo. l. c. 525; Flato v. Mulhall, 72 Mo. l. c. 525.] The laws of sister States must be alleged and proved like any other issue of fact. [Mooney v. Kennett, 19 Mo. 551; Babcock v. Babcock, 46 Mo. 243; Clark v. Barnes, 58 Mo. App. 667; Charlotte v. Chouteau, 25 Mo. 465.]

The defendant, also, with the same purpose, offered in evidence its articles of incorporation and by-laws, and also tendered the testimony of its vice-president as to its character and methods of doing business. But the policy did not refer in any manner to the articles of incorporation or to the by-laws and hence they constituted no part of the contract.

[Elliott v. Ins. Co., 76 Mo. App. l. c. 566.] Nor were they pleaded in any manner and therefore they were inadmissible. The same is true of the testimony offered—there was no issue joined which such testimony would tend to prove.

As the articles of incorporation and the by-laws are not properly before us their provisions and requirements can not be considered or analyzed.

It follows that upon the issues joined and the face of the policy the defendant is not an assessment company within the meaning of our statute, and as this contract was executed and consummated in this State, the law of this State must govern (Horton v. Ins. Co., 151 Mo. 604) and the laws of Iowa, the contrary not being shown, will be presumed to be the same as the law of the forum. [Flato v. Mulhall, 72 Mo. l. c. 525.]

For these reasons the judgment of the circuit court is affirmed.

All concur, except *Robinson, J.*, absent.