# BEAVER STATE INS. ASSN. *v.* SMITH.*

(192 Pac. 798.)

**Insurance—Member of Mutual Fire Association Held not Liable to Assessment.**

1. Where neither by-laws of, nor insurance policy issued by, mutual fire insurance association, organized under Sections 4649–4672, L. O. L., prior to amendment contained in Laws of 1917, page 312, authorized levying of assessment on policy-holder for purpose of meeting losses, but limited mutual contingent liability of each member to one annual premium charged by standard insurance companies upon the same property, and provided for *pro rata* share of funds to insured, suffering loss on insufficiency of reserve fund to meet all losses, policy-holder was not liable to assessment for purpose of meeting losses, under Laws of 1911, pages 279, 406.

**Insurance—Member of Mutual Fire Insurance Association not Liable to Assessment in Absence of Contract.**

2. A member of a mutual fire insurance association, in order to become liable to assessments, must contract to pay such assessments, or assent to some plan or provision for levying assessments, required by the by-laws or constitution of the association, or by the statute authorizing its organization.

> [On validity of assessment on insurance policy to pay anticipated or future losses, see note in Ann. Cas. 1914C, 802.]

> [On liability of members of mutual fire insurance company to assessment, see note in 32 L. R. A. 496.]

**Insurance—Prior to Statute Mutual Fire Association Could Exempt from Assessment Policy-holder Paying Cash Premium.**

3. Mutual fire insurance association, prior to Laws of 1917, page 312, could provide that on payment of cash premium the policy should be exempt from assessment to pay losses occurring during period for which the premium was paid.

From Multnomah: GEORGE W. STAPLETON, Judge.

Department 2.

This is an action by the receiver of the Beaver State Merchants Mutual Fire Insurance Association to collect an assessment from the defendant under the provisions of a fire insurance policy. The de-

---

*For authorities discussing the question of liability of members of mutual fire insurance companies to assessments, see note in 32 L. R. A. 496.                                                                    REPORTER.

fendant is resisting payment on the ground that no assessment can be legally made against him under the policy, claiming that by the payment of a cash premium in advance, as shown in the policy, which is set out in full in the complaint, he was not liable to assessment. The cause was tried by the court without a jury. Findings of facts were made, and a judgment passed in favor of defendant, from which plaintiff appeals. The policy and the constitution and by-laws of plaintiff are admitted by defendant in the pleadings.    AFFIRMED.

For appellant there was a brief over the names of *Mr. Frank Schlegel* and *Mr. J. C. Veazie,* with an oral argument by *Mr. Schlegel.*

For respondents there was a brief over the name of *Messrs. Senn, Ekwall & Recken,* with an oral argument by *Mr. F. S. Senn.*

BEAN, J.—The liability of defendant depends upon the construction of the policy, which contains the constitution and by-laws of the plaintiff association. The plaintiff corporation was organized as a mutual fire insurance company under the provisions of Sections 4649 to 4672, L. O. L., as they were prior to the amendment contained in General Laws of Oregon 1917, page 312. Chapter 226, page 405, and Chapter 175, page 279, General Laws of Oregon 1911, were in force and apply to the policy in controversy. The association becoming financially involved, a receiver was appointed for it. The receiver levied an assessment upon the policy-holders to pay the losses sustained and meet the liabilities of the association. The defendant's policy was issued December 15, 1914, and conforms to Chapter 175, Section 1, which, with the exception of the proviso hereinafter mentioned, is

printed in the policy, and constitutes Article I of the by-laws after which follows a copy of the remainder of the by-laws and the constitution of the association. The constitution of the association contains *inter alia* the following:

"Article II. Object. Section I. Its object shall be the mutual protection of its members against loss by fire and it shall be conducted for the purpose of mutual protection and relief of its members only and not for profit."

On the first page of the policy appears the following:

"The premium charged by standard insurance companies on this risk for the same term would be $23.50, and said amount is the greatest contingent liability of the said member under this certificate (Article II, Section 5, of the By-laws)."

This premium was paid by defendant. Article II, Section 5, of the by-laws provides:

"The Mutual Contingent Liability of each member for premiums and all charges on one year certificates for the payment of losses and expenses shall not exceed one annual premium such as is charged by Standard Insurance Companies on the same property; on three years certificates it shall not exceed two such annual premiums, and on shorter term certificates it shall not exceed the short term rates of the Standard Insurance Companies under similar circumstances."

Article III, Section 2, of the by-laws provides:

"At the time of the renewal of any certificate of insurance there may be deducted from the premium otherwise chargeable thereon such an amount as the Board of Directors may fix and allow, not exceeding the fair and just proportion of the 'Reserve Fund,' accruing to said member on account of the premiums theretofore paid by him; or at the option of any member he may receive the same in cash upon making his application in writing therefor; provided, he

has maintained his certificate during the full period of time for which the same was issued.''

Under Article I of by-laws, Statutory Provisions, appears the following:

''If this policy be made by the mutual or other company having special regulations lawfully applicable to its organization, membership, policies or contracts of insurance, such regulations shall apply to and form a part of this policy as the same may be written or printed upon, attached or appended hereto.''

Article II, Section 2, provides:

''Any member making application for membership and insurance must pay a premium on the insurance applied for equal to the premium which Standard Companies charge on the same property for the same time.''

Article IV, Section 1, reads as follows:

''At the end of each fiscal year or oftener if the Board of Directors may choose, all unexpended portions of premium so charged and received, not exceeding in all fifteen per cent of the premiums collected by the Association, shall be set apart and shall be known as the 'Reserve Fund' of the Association; provided, that such sum shall never exceed the standard annual rate of insurance on all property insured by this Association.''

The proviso contained in Section 1, Chapter 175, Laws of 1911, which may have a bearing on this case, makes provision for other conditions and agreements not enumerated in the statute, and if the conditions restrict the rights of the assured under the policy, each restrictive clause shall be placed on the first page of the policy and preceded by an explanatory title, ''except that mutual companies may print their constitution and by-laws immediately following the provisions of this act.''

Section 4650, L. O. L., directs that:

"No mutual insurance company hereafter organized shall transact any business until it has received subscriptions for insurance in the sum of $300,000, divided among at least three hundred subscribers; and the subscribers for such insurance must be residents of the state, and the property to be insured must be located in Oregon. * * *"

This provision was enlarged by Section 23 of the act of 1917, so as to require:

"Also contingent funds consisting of the liability of its members subject to assessment, in addition to advance assessments of same amount to be collected on delivery of policies, amounting to not less than Five Thousand Dollars each, such liability to be shown in the signed application of its members."

Section 4653, L. O. L., prior to the amendments, directed that the by-laws of such association might or might not provide for a reserve fund.

1. We search in vain for any provision in the policy, by-laws, or statute, authorizing the levy of an assessment upon a policy-holder in the company for the purpose of meeting losses. The whole plan contemplated by the former statute seems to have been to permit a mutual insurance company to insure property located in this state owned by its members, who must be residents of the state, upon receiving subscriptions from 300 subscribers for insurance in the sum of $300,000, leaving it optional with the association to provide in its by-laws for the creation of a reserve fund to meet large losses or not as it preferred. Neither the policy, the constitution, nor the by-laws of the plaintiff association provide for an assessment, or make any provision for the liability of its members in addition to the premium. Profits appear to have been contemplated, but only small

losses expected. Not only in the policy, but in the by-laws, Article II, Section 2, it is plainly stated that any member making application for membership and insurance "must pay a premium on the insurance applied for equal to the premium which standard companies charge." There is nothing in this clause that allows an additional assessment. Moreover, the language of Section 5, above quoted, limits the mutual contingent liability of each member "for *premiums and all charges* on one year certificates for the payment of losses or expenses" to the amount of one annual premium charged by standard insurance companies on the same property. We fail to see how it could be more emphatically stated that a member's liability shall be the premium fixed and no more.

Section 2 of Article VI of the by-laws provides that all claims for loss shall be payable in the order in which proof is filed and the amount determined. Section 3 of the same act reads thus:

"If at any time the 'Reserve Fund' of this Association, together with all other moneys properly applicable thereto, after payment of the running expenses and prior liquidated claims for loss or damage by fire, shall be insufficient to pay and discharge any loss or losses in full, then and in that event said member or members shall receive their *pro rata* share of the funds and moneys so applicable to such loss or losses until such time as the income of the Association shall be sufficient to discharge the same in full."

It would seem strange, if this were an assessment company, that a party who has suffered a loss should receive only a portion of his claim in the event of insufficiency of funds. If assessments were contemplated it would seem that they would have been men-

tioned in this section in connection with the matter of deficiency of funds.   An assessment is defined as:

"A sum specifically levied in mutual benefit insurances upon a fixed and definite plan within the limit of the company's or society's fundamental law of organization to pay losses, or losses and expenses incurred.   They are, to a certain degree, substantially the equivalent of premiums, and form the pecuniary consideration of the contract; that is, a promise to pay duly authorized assessments on call is a consideration of a member's insurance benefits as a member": 3 Joyce on Insurance (2 ed.), § 1245.

2. The liability to pay an assessment is a matter of contract.   A member of a mutual company may so stipulate to pay assessments as that upon failure to fulfill his obligation an action will lie against him to recover the same: 3 Joyce on Insurance (2 ed.), § 1245c.   Only members who have assumed a contract obligation to pay assessments are liable therefor.   A member, in order to become liable for assessments must contract to pay the same or assent to some plan or provision for levying assessments, required by the by-laws or constitution of the mutual association or by the statute authorizing the organization of the company: 3 Joyce on Insurance (2 ed.), §§ 1251, 1253.   Members insured exclusively on the cash premium plan, and who have paid their premium in cash, as defendant has done, are not liable to an assessment for the purpose of paying losses and expenses: 21 Am. & Eng. Ency. of Law, p. 285; *Western Life & Accident Co. of Colorado* v. *State Ins. Board of Neb.,* 101 Neb. 152 (162 N. W. 530); *McDonald* v. *Bankers' Life Assn. of Des Moines,* 154 Mo. 618 (55 S. W. 999); *Ohio ex rel.* v. *Matthews,* 58 Ohio St. 1 (49 N. E. 1034, 40 L. R. A. 418); *Swing* v.

*Humbird,* 94 Minn. 1 (101 N. W. 938); *Given* v. *Rettew,* 162 Pa. St. 638 (29 Atl. 703).

3. It is the position of plaintiff that the company cannot provide that upon the payment of such cash premium the policy-holders shall be exempted from an assessment to pay losses occurring during the period for which the premium was paid, and he cites 22 Cyc. 1417, in support thereof. That statement in Cyc. is founded upon the case of *State ex rel.* v. *Manufacturers' Mut. Fire Assn.,* 50 Ohio St. 145, 150 (33 N. E. 401, 24 L. R. A. 252), which was under a statute of that state which confined the business of an association for the mutual protection of its members to insurance in which the agreement among the members was "to be assessed *specifically* for incidental purposes, and for the payment of losses which occur to its members." Such a provision was wanting in our statute prior to the late amendment, and the precedent does not apply. That rule applies where the limitation of liability is repugnant to the statute under which the mutual company is organized: 3 Joyce on Insurance (2 ed.), § 1255.

The judgment of the lower court was right, and is affirmed.                                AFFIRMED.

McBRIDE, C. J., and JOHNS and HARRIS, JJ., concur.