Argued September 18, reversed October 2, 1928, rehearing denied
January 8, 1929.

# N. P. JOHNSON *v.* SCHOOL DISTRICT No. 1 OF MULTNOMAH COUNTY ET AL.

(270 Pac. 764; 273 Pac. 386.)

For appellant School District No. 1 of Multnomah County there was a brief and oral argument by *Mr. Sam H. Pierce.*

For appellant Northwestern Mutual Fire Association there was a brief over the names of *Messrs. Shank, Belt & Fairbrook* and *Messrs. Platt, Platt, Fales & Smith,* with oral arguments by *Mr. Isham N. Smith* and *Mr. Glenn J. Fairbrook.*

For respondent there was a brief over the names of *Messrs. Malarkey, Seabrook & Dibble* and *Mr. Plowden Stott,* with oral arguments by *Mr. E. B. Seabrook* and *Mr. Plowden Stott.*

BELT, J.—This is a suit to cancel certain policies of insurance issued by the Northwestern Mutual Fire Association to School District No. 1 of Multnomah County, Oregon, and to enjoin the school district from

purchasing similar policies from such company. The precise question presented is whether a mutual fire insurance company may, under the Constitution and statutes of this state, issue a nonassessable policy to a school district. It is the contention of the plaintiff-respondent that a cash premium policy violates the spirit and intent of Article XI, Section 9, of the Oregon Constitution which, so far as material herein, provides:

"No county, city, town or other municipal corporation, by vote of its citizens, or otherwise, shall become a stockholder in any joint company, corporation or association, whatever, or raise money for, or loan its credit to, or in aid of, any such company, corporation or association."

1. The defendant insurance company was organized under the laws of the State of Washington and is duly authorized to do business in this state. It is conceded that its assets are in excess of $200,000 and that it has a net cash surplus in excess of $100,000. The cash premium policy purports to be nonassessable, as upon the face thereof it is stated: "This policy participates in the profits and is absolutely non-assessable." The by-laws of the company provide in substance that, when a policy is issued on the cash premium plan, the premium paid "shall be considered a full premium and shall be the limit of the liability of the insured under such policy." However, the law of this state governs the contract of insurance: *Equitable Life Assurance Society of the United States* v. *Pettus*, 140 U. S. 226 (35 L. Ed. 497, 11 Sup. Ct. Rep. 822). The association is authorized to do business in this state only upon compliance with Section 6420, Or. L.

2. We inquire whether such a policy-holder, within the fair import of the above constitutional inhibition, becomes a "stockholder" in the association or loans its credit to it. Since the constitutional provision is a limitation and not a grant of power, it is the duty of the court, in interpreting it, to consider the evil intended to be avoided. This constitutional provision was added to the fundamental law of the state, through the initiative, to prevent the investment of public funds in private enterprises. It was designed to curb speculation which in many instances resulted in pecuniary loss to the taxpayer: *Municipal Security Co.* v. *Baker County*, 39 Or. 396 (65 Pac. 369).

If the contract of insurance subjects the school district to a contingent liability, it is in violation of the Constitution and *ultra vires*. Mere membership in the association does not offend. It may well be argued, although there are decisions to the contrary, that one who, under the terms of a policy, agrees to be answerable for assessments in the event of loss is, within the meaning of the Constitution, a "stockholder," but it would be unduly extending the scope of this constitutional provision to apply it to a case wherein the policy-holder is expressly exempted from liability. In cases involving a distribution of assets of a mutual insurance company, or where the member is undertaking to assert some right under the policy, it has been held, with good reason, that a policy-holder is, in a sense, a stockholder: *Huber* v. *Martin*, 127 Wis. 412 (105 N. W. 1031, 115 Am. St. Rep. 1023, 7 Ann. Cas. 400, 3 L. R. A. (N. S.) 653); *Sugg* v. *Farmers' Mutual Ins. Assn. et al.* (Tenn. Ch.), 63 S. W. 226; *Carlton* v. *Southern Mutual Fire Ins. Co.*, 72 Ga. 371. In the instant case a policy-holder, by virtue of its contract, has determined its legal status,

and in no manner is there the same character of interest which a stockholder has in a stock insurance company. As stated in *Beaver State Ins. Assn.* v. *Smith,* 97 Or. 579 (192 Pac. 798), Mr. Justice BEAN speaking for the court:

"The liability to pay an assessment is a matter of contract. A member of a mutual company may so stipulate to pay assessments as that upon failure to fulfill his obligation an action will lie against him to recover the same: 3 Joyce on Insurance (2 ed.), § 1245c. Only members who have assumed a contract obligation to pay assessments are liable therefor. A member, in order to become liable for assessments must contract to pay the same or assent to some plan or provision for levying assessments, required by the by-laws or constitution of the mutual association or by the statute authorizing the organization of the company: 3 Joyce on Insurance (2 ed.), §§ 1251, 1253. Members insured exclusively on the cash premium plan, and who have paid their premium in cash, as defendant has done, are not liable to an assessment for the purpose of paying losses and expenses. (Citing authorities.)

If membership in the association created a liability there would be better reason to assert that the term "stockholder" is synonymous with "member." We are not so much concerned with mere names as we are with the reason for the rule.

3. The decision of the case hinges primarily upon the construction of Section 6408, Or. L., which provides:

"Each person or partnership or corporation or society accepting a policy in any such mutual insurance company shall thereby become a member of such corporation or association and shall be liable for his proportionate share of losses and operating expenses as hereinafter provided. Any person or per-

sons holding property in trust may insure the same in such company, and as such trustee assume the liabilities and be entitled to the rights of a member, but shall not be personally liable upon such contract of insurance. Any such company may fix the contingent and mutual liability of its members for payment of losses and expenses by a uniform rule set forth in its by-laws and policies and such mutual liability shall not be less than twice the amount of the usual advance assessment written in the policy; provided, however, that companies which have accumulated in the regular course of the business, assets of not less than two hundred thousand dollars, of which not less than one hundred thousand dollars is net cash surplus over and above all the requirements of this act shall have power, subject to the approval of the insurance commissioner, while in that condition, to adopt by-laws limiting the liability of its policy-holders to the amount it may specify in its policies, and the power to issue policies with such limitation of liability to continue only during the time such corporation or association is in such financial condition; provided further, that every such corporation or association must print upon its policies such by-laws as will define the liability of a policy-holder.''

We think it was the intention of the legislature to authorize mutual insurance companies when their business was so stabilized—as evidenced by a sufficient reserve fund in the form of a net cash surplus— to issue policies of insurance upon the cash premium plan as in the case of stock companies. The cash premium plan is not in conflict with the theory of mutual insurance: *Mygatt* v. *New York Protection Ins. Co.*, 21 N. Y. 52. The policy-holder has the dual relationship of the insurer and the insured. The cash premium is the contribution to the common fund to which resort may be had in the event of loss. It is the contribution which experience has shown is the

just and equitable amount which should be paid by the policy-holder and constitutes a part of the assets of the company—as much so as if premium notes had been given for the insurance.

As we construe the above section, a mutual insurance company is authorized to issue nonassessable policies only so long as it has assets of not less than $200,000 and a net cash surplus of not less than $100,-000. In other words, the authority to issue such policies continues until the company is unable to maintain the financial standard fixed by the statute. We are unable to agree with counsel for respondent, although we appreciate that the statute is susceptible of two constructions, that liability to assessment would result in the event that the net cash surplus was less than $100,000. If the latter construction be correct, then a cash premium policy is a mere misnomer. The fallacy of plaintiff's contention is shown in that, if his theory be correct, a policy-holder would be subjected to an assessment although the company might have a cash surplus of $99,000. There can be no surplus if the liabilities exceed the assets.

4. We conclude that the statute authorizes the issuance of nonassessable policies and, since liability to assessment ceases on payment of the cash premium (*Schimpf & Son* v. *Lehigh Valley Mutual Ins. Co.,* 86 Pa. St. 373; *Farmers & Breeders' Mutual Reserve Fund Live Stock Ins. Co.* v. *Beck,* 66 Pa. Super. Ct. 528; *In re Minneapolis Mutual Fire Ins. Co.,* 49 Minn. 291 (51 N. W. 921); 21 C. J. 121, there is no violation of the letter or the spirit of Article XI, Section 9, of the Constitution.

The conclusion reached is strongly supported by *French* v. *Millville,* 66 N. J. Law, 392 (49 Atl. 465), rendered under a similar constitutional provision

providing that no municipal corporation "shall directly or indirectly be the owner of any stock or bonds of any association or corporation." In that case, although there was a contingent liability under the policy, the court said:

"The scheme of mutual insurance in such association does not fasten upon the members any liability which municipal corporations may not with reasonable safety assume, for the limit of obligation is always fixed at the time the insurance is obtained and is rarely enforced beyond what would be charged for insurance on the non-mutual plan."

The court concluded that the city, by giving its premium notes, did not loan its credit to the company in violation of the Constitution.

We do not go so far as the New Jersey case, holding that there is no lending of credit even though a contingent liability exists. In the instant case there is no liability—contingent or otherwise. In McQuillin on Municipal Corporations, Section 2171, it is said (citing in support thereof *French* v. *Millville, supra*):

"The fact that a municipality takes out insurance on its property by becoming a member of a mutual insurance company does not make it the owner of stock in a private company so as to violate the constitutional prohibition; and giving premium notes for payment of assessments to meet losses incurred by a mutual insurance company of which the municipality is a member does not constitute a loaning of credit to the company."

Dillon, in his text on Municipal Corporations (5 ed.), Section 976, concurs with McQuillin in the following language:

"As an incident to the power to erect and maintain a city hall, school houses, and other public buildings,

the municipality has the right to contract for indemnity for loss by fire by insuring these buildings; and, having the power to insure, it may insure them in a corporation organized on the mutual plan under the laws of the state in which the city is located. Giving premium notes for losses incurred by such company on other insurance is neither a loan of the credit of the city, nor the owning of stock or bonds of the company in violation of constitutional provisions.''

In Cooley's Briefs on Insurance (2 ed.), Volume 1, page 104, it is said:

''As a municipal corporation is empowered to erect and maintain certain public buildings, it also has the power, incidental thereto, to contract for indemnity against loss by the burning of such buildings. This right may be exercised by insuring in a mutual, as well as in a stock company. The scheme of mutual insurance does not fasten on the members any liability which a municipal corporation may not with reasonable safety assume.''

Also see cases in note to *Wetmore* v. *McElroy,* (96 S. C. 182, 80 S. E. 266), in Annotated Cases 1916B, at page 85.

Much reliance is placed by respondent on the case of *School District No. 8* v. *Twin Falls County Mutual Fire Ins. Co.,* 30 Idaho, 400 (164 Pac. 1174), wherein it was held that the issuance to a school district of a policy of unlimited liability was in violation of a similar constitutional provision. In our opinion this case is not in point, for the reason that it was decided under a statute which provided that ''all the policies issued by the company must state specifically that the liability of each member is unlimited.'' The policy under consideration conformed to the statute in this respect, as the policy-holder assumed unlimited lia-

bility. The distinction which we have here made between nonassessable policies and those having a contingent liability, so far as the application of the constitutional prohibition is involved, was clearly recognized by the Idaho court, as a careful reading of that decision will disclose.

The decree of the Circuit Court granting plaintiff the relief as prayed for in the complaint is reversed and the suit is dismissed.

REVERSED AND SUIT DISMISSED.

BEAN and ROSSMAN, JJ., not sitting.

———————

Rehearing denied January 8, 1929.

ON PETITION FOR REHEARING.

(273 Pac. 386.)

For the petition, *Messrs. Malarkey, Seabrook & Dibble* and *Mr. Plowden Stott.*

*Contra, Messrs. Shank, Belt & Fairbrook* and *Messrs. Platt, Platt, Fales & Smith.*

*Messrs. Hewitt & Sox, Amicus Curiae.*

*Mr. Sam H. Pierce,* for School District No. 1, Multnomah County.

COSHOW, J.—5. The original opinion was handed down October 2, 1928: 270 Pac. 764. Plaintiff petitioned for rehearing, and assigns nine alleged errors in the original opinion. All of the alleged errors,

however, are based upon the contention expressed as follows:

"In other words our contention has always been that Section 6408, Oregon Laws, does not, as far as foreign mutuals are concerned, excuse or relieve limited liability policy holders from the liability to the assessment required and prescribed in sub. (3) of Section 6416, Oregon Laws."

Plaintiff seems to concede that mutual insurance companies organized under the law of this state may lawfully issue policies of insurance fully paid up. He denies this privilege or right to foreign mutual insurance companies though duly authorized to write policies in the State of Oregon. Plaintiff arrives at this conclusion by construing the language in Section 6408, Or. L., as limited to domestic corporations. The language referred to is as follows:

"Any such company may fix the contingent and mutual liability of its members for payment of losses and expenses by a uniform rule set forth in its by-laws and policies and such mutual liability shall not be less than twice the amount of the usual advance assessment written in the policy; provided, however, that companies which have accumulated in the regular course of the *business, assets of not less than two hundred thousand dollars, of which not less than one hundred thousand dollars is net cash surplus over and above all the requirements of this act shall have power, subject to the approval of the insurance commissioner, while in that condition, to adopt by-laws limiting the liability of its policy-holders to the amount it may specify in its policies, and the power to issue policies with such limitation of liability to continue only during the time such corporation or association is in such financial condition; provided further, that every such corporation or association must print upon its policies such by-laws as will define the liability of a policy-holder."

It is the contention of plaintiff that "such company" refers only to companies organized in Oregon. It might be truthfully said that the word "such" refers to Section 6399, Or. L., and following sections, all of which refer in a general way to companies organized under the laws of Oregon. All of these sections, however, including Section 6408, are made applicable to foreign mutual companies by Section 6420. We cannot adopt the argument of plaintiff without doing violence to the language of the statute. Said Section 6399 is a part of Section 23, Chapter 203, Laws of 1917. Section 6408 is Section 23–i. Section 6824 is 23–u. These sections are all subdivisions of the same section in the statute as it was originally enacted in 1917. They must all be read together. All the sections are made to include foreign mutual insurance companies by said Section 6420. We can find no justification at all for not applying the provisions in Section 6408 to foreign mutual insurance companies. The language of the statute is:

"The insurance commissioner of the (this) state upon receipt and examination of such statement and certificate and upon satisfying himself of the correctness thereof and of compliance with the laws of this state applicable as shown by this act shall issue to such corporation or association a certificate of authority granting it *full power* to transact business under this act."

6, 7. By the terms of Sections 6408 and 6420 defendant insurance company is authorized to write insurance policies for cash premiums. Such insurance companies are thereby authorized to make a valid contract to issue a policy of insurance for a definite sum paid to it without the power or right

to levy any assessment for any future liabilities during the term of that policy. The language of the statute limits the power of an insurance company to write such policies while it maintains the assets and surplus described in said Section 6408. If its assets and surplus should be depleted below the requirements of the statute the insurance company could no longer issue valid policies for cash premiums. As long, however, as it maintains the integrity of its assets and surplus it can continue to issue binding contracts. It having been duly authorized to issue such a policy of insurance, that policy would not be voided by a subsequent depletion of the assets and surplus. A contract of insurance valid when issued does not become invalid because the company issuing it subsequently becomes insolvent. The further argument advanced by plaintiff is sufficiently met in the original opinion, to which we adhere.

Rehearing denied.