## LEWIS v. INDEPENDENT SCHOOL DIST. OF CITY OF AUSTIN et al.

### No. 3769.

Court of Civil Appeals of Texas. Beaumont.

Jan. 23, 1941.

Rehearing Denied Feb. 5, 1941.

Hardy Hollers, of Austin, for appellant.

J. M. Patterson, Black, Graves & Stayton, and J. Harris Gardner, all of Austin, and Brown, Carlson, Kiefer & Kunke, of Chicago, Ill., for appellees.

WALKER, Chief Justice.

The simple question presented by this appeal is whether appellee, the Independent School District of the City of Austin, incorporated under the laws of this state as an independent school district, with the statutory board of trustees and other officers, can legally purchase and hold the policy of fire insurance issued to it by the Millers Mutual Fire Insurance Company, legally incorporated under the laws of Texas. The action is by appellant, C. H. Lewis, in his capacity of a tax paying citizen, a resident of the School District, to enjoin appellee from consummating the purchase of the insurance policy. The amount of the policy premium was $264; the insurance policy had been issued and delivered to the school district, but the premium had not been paid. On trial to the court without a jury, on an agreed statement of facts, judgment was rendered denying appellant's prayer, from which he prosecuted his appeal to the Austin Court of Civil Appeals. The case is on our docket by order of transfer by the Supreme Court.

Appellee, the School District, contracted for this policy of insurance under the provisions of article 4860a—8, Vernon's Ann. Civ.St.: "Any public or private corporation, board or association in this State or elsewhere may make application, enter into agreements for and hold policies in any such mutual insurance company. Any officer, stockholder, trustee, or legal representative of any such corporation, board, association or estate may be recognized as acting for or on its behalf for the purpose of such membership, but shall not be personally liable upon such contract of insurance by reason of acting in such representative capacity. The right of any corporation organized under the laws of this State to participate as a member of any such mutual insurance company is hereby declared to be incidental to the purpose for which such corporation is organized and as much granted as the rights and powers expressly conferred." Clearly, under the provisions of this statute the School District had the right to contract with the Millers Mutual Fire Insurance Company for the policy in issue. Appellant recognizes this as a proper construction of article 4860a—8, but it is his contention that this article of the statute contravenes the following provisions of our State Constitution: Vernon's Ann.St. Sec. 3 of Art. 11: "No county, city, or other municipal corporation shall hereafter become a subscriber to the capital of any private corporation or association, or make any appropriation or donation to the same, or in anywise loan its credit; but this shall not be construed to in any way affect any obligation heretofore undertaken pursuant to law." Section 52 of Art. 3: "The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company."

The courts will not strike down as unconstitutional an act of the Legislature unless the Constitution, considered in the light of the facts of the case at bar, clearly forbids what the Legislature had done. Texas National Guard Armory Board v. McCraw, Attorney General, 132 Tex. 613, 126 S.W.2d 627.

We take the following summary of the controlling facts from appellees' brief:

"The management of the public free schools of the City of Austin is by law placed in its board of trustees, consisting of seven members, and under the provisions of Article 2827, R.S.1925 [Vernon's Ann. Civ.St. Art. 2827], such board is expressly authorized to pay insurance premiums out of local school funds from district taxes, tuition fees of pupils and other local sources, and it had, at the time the insurance policy here involved was written and delivered to it, ample funds from such sources to pay the premium of $264.00, which is the standard premium determined by rates fixed by the Board of Insurance Commissioners for a similar policy of fire insurance, whether issued by a mutual com-

pany or a stock company. This policy of insurance is nonassessable. No further payment can be exacted.

"The Millers Mutual Fire Insurance Company of Texas is a mutual fire insurance corporation, originally chartered as such by the State of Texas on February 28, 1898. Its charter provides that the corporation is organized for the purpose of 'the insuring of the property of its members in this State and in any other State or States of the United States of America, against loss by fire,' and that the corporation 'shall have no capital stock.'

"Its by-laws provide that all policies shall be issued on the participating plan; that each person, firm or corporation having a policy in the company 'shall be a member thereof during the life of his policy, and no longer,' and shall be entitled to one vote regardless of the amount of insurance or the number of policies held by him; that the management of the company shall be in charge of a Board of Directors to be elected annually by a majority vote of the members present or represented by proxy; that the liability of each policyholder is limited to and determined to be the amount of deposit premium fixed and specified in his policy; that the deposit premium shall be paid by the policyholder upon the issuance of the policy, and will be returned to the policyholder, upon termination of the policy, after deducting therefrom the amount due or accrued from such policyholder, and that all policies issued should be subject to the conditions of such by-laws.

"The by-laws also provide for the creation of a permanent guaranty fund of $200,000.00 over and above all legal reserves and other liabilities, 'for the greater protection of this company's policyholders,' and the directors may also create and maintain against the contingency of excessive loss in any year such surplus as they may deem expedient; but 'no member, while this company continues to transact business, shall ever be entitled to receive any portion of such funds except in payment of losses.'

"The appellee mutual insurance company has a deposit of securities with the State Treasurer of Texas in the amount of $200,000.00; it is licensed by the Texas Insurance Department as a mutual fire insurance company, and under the law of this State such companies when they have a surplus in excess of $100,000.00 can issue a nonassessable policy. As of December 31, 1939, this company owned assets of $2,153,053.04 and had a net surplus, over and above all legal reserves and other liabilities, of $1,140,066.93, and since its surplus is far in excess of $100,000.00 it is legally authorized to issue nonassessable policies.

"The policy involved in this case is nonassessable and contains excerpts from the by-laws evidencing such limit of liability. It was issued for the stipulated premium of $264.00, which is the amount of premium determined by the premium rates fixed and promulgated by the Board of Insurance Commissioners, and is exactly equivalent to the premium that would be exacted and paid on the same policy if issued by a stock fire insurance company.

"The Millers Mutual Fire Insurance Company of Texas has been issuing fire insurance policies to public corporations (counties, cities, towns, independent and common school districts) for more than 20 years. At all times during such time the company has had outstanding fire insurance policies held by such corporations. It now has such policies held by more than 50 of such public corporations, and writes about 50% of all mutual fire insurance held by such Texas counties, cities, towns and schools.

"The participating plan upon which the policies of the company are issued enables its policyholders to receive insurance protection at a saving over the standard rate. The unused portion of the deposit premiums of policyholders is returned to them pro rata on the termination of their policies. The company was organized in 1898 and up to January 1, 1940, it had collected a total of $21,252,975 in deposit premiums and had returned to its policyholders $6,282,432 in unused premiums. The substantial savings in the cost of insurance carried in The Millers Mutual Fire Insurance Company is evident. The anticipation of a very probable saving in insurance costs for the school districts was one of the reasons why the school board elected to insure in the mutual company."

On the following propositions, pertinent to the facts of this case, Article 4860a—8 is not unconstitutional:

(1) By purchasing the policy of fire insurance and by contracting to pay the premium in the amount of $264, the School District did not make a loan of its credit

to the Millers Mutual Fire Insurance Company. Unless prohibited by statute, mutual insurance companies may issue policies of fire insurance for a cash premium only, without contingent liability attaching to the policyholder. Union Ins. Co. v. Hoge, 1858, 21 How. 35, 62 U.S. 35, 16 L.Ed 61; McMahon v. Cooney, 1933, 95 Mont. 138, 25 P.2d 131; Spruance v. Farmers' & Merchants' Ins. Co., 1886, 9 Colo. 73, 10 P. 285; Patrons' Mut. F. Ins. Co. v. Brinker, 1926, 236 Mich. 367, 210 N.W. 329; State v. Manufacturers' Mut. Fire Ins. Co., 1887, 91 Mo. 311, 3 S.W. 383.

■ On the conditions of the policy and of the by-laws of the Millers Mutual Fire Insurance Company, in the event of the insolvency of the insurance company, no assessment could be made against the School District on this policy. It is elementary that a receiver for an insolvent company can not enforce any contract beyond its terms; the policy in issue denied any and all assessment liability against the School District.

■ "The receiver has no greater right to impose assessments than that possessed by officers of the company on the date the custodian took possession." Central Mutual Auto Ins. Co. v. Gauss, 1940, 292 Mich. 309, ·290 N.W. 808, 811.

■ The School District did not make a loan of its credit to the Millers Mutual Fire Insurance Company on the theory of a partnership among the policyholders in the company. A mutual insurance corporation is not a partnership; the policyholders are neither partners of each other nor of the company.

■ "But whatever analogies there may be between mutual companies and ordinary partnerships, and the relation of the members of the two organizations, an incorporated company, although organized upon the mutual principle, is in no proper or legal sense a partnership." Cohen v. New York Mutual Life Ins. Co., 1872, 50 N.Y. 610, 624, 10 Am.Rep. 522.

" * * * so a policy holder is not a partner of the company." Joyce on Insurance, 2d Ed., Section 319; Brown v. Stoerkel, 1889, 74 Mich. 269, 41 N.W. 921, 3 L.R.A. 530.

■ (2) The School District did not become a stockholder in the Millers Mutual Fire Insurance Company or a subscriber to its capital stock by its purchase of the insurance policy in issue.

In its brief appellee has reveiwed the authorities from many states, and on these authorities the following proposition is announced: "It has never been authoritatively held by any court that a policy holder in a mutual insurance company is a stockholder in the company. Although courts have occasionally illustrated the rights and liabilities of policyholders in such mutual companies by comparison with the rights of stockholders in other types of corporations, it has always been clear in all these cases that the courts were merely drawing an analogy to cover only the immediate point being illustrated. The cases passing directly on this question have universally held that a policyholder in a mutual insurance company is not a stockholder."

Section 52 of Article 3 of our State Constitution has its counterpart in the constitutions of many of the states. The constitutions of thirty-five states, including Texas, definitely prohibit the lending of its money or its credit by a municipality or other public subdivision to a private corporation; the constitutions of these states also prohibit municipalities and other political subdivisions from becoming stockholders in private corporations. Twenty-nine of these states have enacted statutes similar to Article 4860a—8, expressly authorizing the insuring of public property in mutual insurance companies. In no case has any court held its statute on this issue unconstitutional. These statements are made on authority of appellees' brief.

In French v. Mayor of Millville, 66 N.J. L. 392, 49 A. 465, 466, affirmed 67 N.J.L. 349, 51 A. 1109, the right of a city to insure in a mutual company was affirmed. The court said meeting many of appellant's points of argument: "By giving its premium notes, the city did not loan its credit to the company. Its promises were made for a consideration of value beneficial to itself, and, like other assets of the company, they were purchased, not borrowed; nor did the so-called 'membership' of the insured render the city in any sense the owner of the stock or bonds which belonged to the company, or a holder of stock in the company, within the fair import of the constitutional prohibition. The right, beyond mere insurance, which insured parties acquired by virtue of their membership in this company, is declared by section 11 of the charter to be a right to a 'proportion of the profits, if any, of each year's business, in proportion to the amount of premium

paid.' This right to share in a limited part of the profits of business is essentially different from corporate stock, which represents a proportionate part of all the property of the corporation. The difference is similar to that which exists between the interest of the members of a co-partnership and that of its employés, whose compensation is measured by its profits."

Downing v. Erie School District, 297 Pa. 474, 147 A. 239, 241, involved constitutional provisions of the State of Pennsylvania, similar to the constitutional provisions of our constitution invoked by appellant, and a statutory enactment, 53 P.S.Pa. § 1761, authorizing insurance policies on public school buildings to be taken out "with any mutual fire insurance company duly authorized by law to transact business in the Commonwealth of Pennsylvania." The court said: "Our constitutional provision was designed to prevent municipal corporations from joining as stockholders in hazardous business ventures, loaning its credit for such purposes, or granting gratuities to persons or associations where not in pursuit of some governmental purpose. Taking of insurance in a mutual company with limited liability is not within the inhibition, for the district does not become strictly a stockholder, nor is it loaning its credit."

In Fuller v. Lockhart, 209 N.C. 61, 182 S.E. 733, 737, sustaining the right of the County Board of Education to purchase a policy of insurance in a mutual company, the court said: "Under the purchase of the insurance the board in no way became a stockholder or partner, nor did it incur any liability for debts. It is a mutual company without stock or stockholders. Its policyholders are its only members. A stockholder is the owner or holder of shares in a corporation having a capital stock represented by shares. The policyholders can in no way become liable for the debts of the corporation. For the insurance purchased, it paid $12.35, and its contingent liability is limited to the maximum of the cash payment, in the present case to $12.35. The county board of education had full power and authority to make the contract and it was in its sound discretion. * * *"

We make the following quotations from the leading textbooks discussing this proposition:

(a) "By becoming a member of a mutual insurance company a municipality does not become the owner of any stock or bonds of the company in violation of a constitutional provision prohibiting any municipality from owning any stock or bonds of any association or corporation; and by giving premium notes for the payment of assessments to meet losses incurred by such an insurance company, the municipality does not loan its credit to the company in violation of a constitutional prohibition against doing so." 1 Cooley's Constitutional Limitations, vol. 1, 8th Ed., p. 469, note.

(b) "As an incident to the power to erect and maintain a city hall, school houses, and other public buildings, the municipality has the right to contract for indemnity against loss by fire by insuring these buildings; and, having the power to insure, it may insure them in a corporation organized on the mutual plan under the laws of the state in which the city is located. Giving premium notes for losses incurred by such company on other insurance is neither a loan of the credit of the city, nor the owning of stock or bonds of the company in violation of constitutional prohibitions." 3 Dillon on Municipal Corporations, 5th Ed., p. 1558.

(c) "The fact that a municipality takes out insurance on its property by becoming a member of a mutual insurance company does not make it the owner of stock in a private company so as to violate the constitutional prohibition; and giving premium notes for payment of assessments to meet losses incurred by a mutual insurance company of which the municipality is a member does not constitute a loaning of credit to the company." 5 McQuillin on Municipal Corporations, 2d Ed., p. 959.

(d) "As a municipal corporation is empowered to erect and maintain such public buildings, it also has the power, incidental thereto, to contract for indemnity against loss by the burning of such building. This right may be exercised by insuring of such building. This right may be exercised by insuring in a mutual, as well as in a stock company." 1 Cooley Briefs on Insurance, 2d Ed., 104.

(e) "If the charter of a city empowers it to exact (erect) and maintain certain public buildings, the city acquires as incidental to the power thus granted the right to contract for indemnity against loss of such buildings by fire and such right can be exercised by insuring on the mu-

tual plan. \* \* \*" 1 Joyce on Insurance, 2d Ed., p. 708.

The following additional authorities sustain our proposition that the School District did not become a stockholder in Millers Mutual Fire Insurance Company or a subscriber to its capital stock by purchasing the insurance policy in issue. Clifton v. School Dist. No. 14, 1936, 192 Ark. 140, 90 S.W.2d 508, 509; Miller v. Johnson et al., 1935, 4 Cal.2d 265, 48 P.2d 956; Burton v. School District No. 19, 1934, 47 Wyo. 462, 38 P.2d 610; Johnson v. School District No. 1, 128 Or. 9, 270 P. 764, rehearing denied, 1929, 128 Or. 18, 273 P. 386; McMahon v. Cooney, 1933, 95 Mont. 138, 25 P.2d 131; Dalzell v. Bourbon County Board of Education, 1921, 193 Ky. 171, 235 S.W. 360; City of Macon v. Benson, 1932, 175 Ga. 502, 166 S.E. 26.

Appellant prefaces his argument with the following statement: "The principle of law involved in this case has not been ultimately decided by our Appellate Courts." However, appellant contends strenuously that the following authorities by our Texas courts rule the constitutional questions presented by this appeal: City of Tyler v. Texas Employers' Ins. Ass'n, Tex.Com. App., 288 S.W. 409; Southern Cas. Co. v. Morgan, Tex.Com.App., 12 S.W.2d 200; Great American Indemnity Co. v. Blakey, Tex.Civ.App., 107 S.W.2d 1002. As recognized by appellant, these cases are not exactly on all fours with the case at bar. As we understand these cases, the holdings invoked by appellant are obiter and do not control the judgments; the courts were discussing policies where the policyholders, under the by-laws of the companies and the terms of the policies, were subject to assessment. In the policy at issue before us, both on the law and on the facts, the School District could never have been called on for any additional payment.

The point presented by this appeal is of the greatest importance to the municipalities of this state. Article 4860a—8 is remedial in its nature, and on the statement we have taken from appellees' brief it appears that the municipalities insuring with the Millers Mutual Fire Insurance Company make great savings on their insurance premiums. Since the very constitutional points presented by this appeal have been ruled against appellant in every state where they have been raised, we do not feel authorized, on the authorities cited by appellant, to hold that Article 4860a—8 is unconstitutional.

It follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.