(29 Misc. Rep. 195.)

NEW YORK, N. H. & H. R. CO. v. VILLAGE OF NEW ROCHELLE.

(Supreme Court, Special Term, New York County. October, 1899.)

1. MUNICIPAL CORPORATIONS — TRUSTEES — EXECUTORY AGREEMENT TO OPEN
   STREETS.
       Under Laws 1864, c. 249, tit. 5, § 2 et seq., which provide that the
   trustees of the village of New Rochelle shall have power to cause streets
   and avenues to be opened, widened, and regulated, and the expense as-
   sessed on property benefited, when one-third of the taxable inhabitants
   of the village present a petition therefor, whereupon the trustees shall
   give notice of the time when they will act on the petition, and that they
   may at such time, unless a remonstrance signed by one-third of the
   taxable inhabitants of the village is presented, by resolution decide to
   allow such improvement, the trustees of New Rochelle have no authority
   to make a contract to cause legal proceedings to be instituted to discon-
   tinue existing streets or to open new ones.

2. SAME—LEGISLATIVE FUNCTIONS.
       The trustees of a village cannot by a present agreement bind themselves
   to exercise their legislative powers in a particular manner at some future
   time.

3. SAME.
       Under Laws 1890, c. 568, § 82, which provides that any person may make
   application to the commissioners of highways of a town for the discon-
   tinuance of a highway, and which provides that after such application is
   filed a petition must be presented to the county court for the appointment
   of commissioners to determine whether the street shall be discontinued;
   and Laws 1870, c. 291, tit. 7, § 1, as amended by Laws 1871, c. 870, § 3,
   under which the trustees of the village of New Rochelle are authorized to
   perform the duties of commissioners within the village,—an agreement
   on the part of the trustees to take all necessary legal steps to cause the
   discontinuance of a street is ultra vires, and they are not bound to provide
   some person to make application and maintain the proceedings for the
   appointment of commissioners.

Action by the New York, New Haven & Hartford Railroad Com-
pany against the village of New Rochelle to compel specific per-
formance of a contract to discontinue the use of certain streets, and
to open certain new streets. The plaintiff demurs to defendant's
answer. Overruled.

Henry W. Taft, for plaintiff.

J. Addison Young (Charles H. Young, of counsel), for defendant.

BEEKMAN, J. On the 3d day of August, 1892, the defendant,
a municipal corporation organized under the laws of this state,
through its trustees entered into a contract in writing with the
plaintiff containing the following provisions:

"First. Said village, for the considerations hereinafter expressed, assents to
discontinuances as public highways of (1) so much of Harrison street, in said
village, as is bounded on both sides by land of said company; (2) so much of
Webster avenue, in said village, as lies between the southeasterly line of the
Harlem River and Portchester Railroad, as now laid out, and the main line
of the railroad of said company; and (3) so much of Rockdale avenue as lies
between Beechwood avenue and said main line of railroad; and agrees to
forthwith cause to be instituted all legal proceedings necessary to effect said
discontinuances, and to cause the same to be prosecuted with due diligence
to a final determination. Second. Said village further agrees to obtain for
said company a release to it of all private ownership in the land lying within
so much of the limits of the portion of Rockdale avenue to be discontinued as

aforesaid as is not included within the limits of Second avenue extension here-inafter mentioned.  Third. Said village further agrees to locate and open a new 'street in continuation and extension of Second street, in the locality known as 'West New Rochelle,' beginning at the present southerly terminus of said· Second street, and running thence in a southeasterly direction across said main line of railroad to the corner of Beechwood and Rockdale avenues. Fourth. Said village further agrees to, and doth hereby, establish the level of the top of the bridge abutments already erected at Center avenue extension as the grade of said street where the same crosses said main line of railroad. Fifth. Said village further agrees not to lay out any street across said main line of railroad or said Harlem River and Portchester Railroad, on the same grade or level with the tracks thereof; nor any street, other than those herein specified, upon, over, or under lands of said company, until an actual public necessity shall so require."

In consideration of these agreements, the railroad company agreed on its part (1) to carry said extension of Second avenue across and 15 feet under the grade of its tracks, and to complete its work within six months after notice so to do by vote of the village trustees; (2) in lieu of that portion of Rockdale avenue to be discontinued and released as above provided, to dedicate to public highway uses all land belonging to it between its main line and Beechwood avenue, within the limits of the layout of said Second street extension, not exceeding 50 feet in width; (3) to make certain improvements particularly specified in and about its railway station at New Rochelle, tending to subserve the convenience of its use by the traveling public.  In addition to the above the plaintiff further agreed to pay the defendant the sum of $5,750 upon the performance by it of all of its agreements, and upon the completion by it of approaches to the bridge over the main line of the railroad at said Center avenue extension; and this payment, it is declared, shall be in full satisfaction of all claims of every name and nature in favor of the village against the company, relating in any way to Center avenue extension, station improvements, and other matters mentioned in the agreement.  The railroad company now brings this action to obtain a specific performance by the village of its part of the contract, and for the recovery of damages for its failure to do so; and in its complaint, after setting forth the agreement, the performance by plaintiff of certain of its covenants, and its offer to execute the others upon the performance by defendant of the obligations it had assumed, it avers that the defendant has neglected and refused to perform any portion of its part of the contract, the breach being specifically stated to be that it has neglected and refused:

"(1) To forthwith cause to be instituted all legal proceedings necessary to discontinue so much of Harrison street, in said village, as is bounded on both sides by land of the plaintiff company, so much of Webster avenue, in the said village, as lies between the southeasterly line of the Harlem River & Portchester Railroad, as laid out at the date of said contract, and the main line of the railroad of this plaintiff, and so much of Rockdale avenue as lies between Beechwood avenue and the said main line of railroad, and to cause such proceedings to be prosecuted with due diligence to a final determination. (2) To locate and open a new street in continuation and extension of Second street, in the locality of West New Rochelle, beginning at the southerly terminus of said Second street, as then existing, and running thence in a south-easterly direction across said main line of railroad to the crossing of Beechwood and Rockdale avenues."

The defendant has interposed an answer to the. complaint, denying some of the allegations therein contained, and setting up certain affirmative defenses, one of which avers that the contract in question was one that the village had no power or authority to make, and that it was therefore null and void. To this last defense the plaintiff has demurred for insufficiency, and, as this permits the defendant, in turn, to attack the sufficiency of the complaint, the question is thus broadly presented whether the latter sets forth facts sufficient to constitute a cause of action. The crucial question in the case is whether the trustees of the defendant had authority to bind it to the performance of the obligations they assumed to enter into on its behalf.

The village of New Rochelle was originally incorporated under the general law for the incorporation of villages passed December 7, 1847. By Laws 1864, c. 249, entitled "An act to amend an act entitled 'An act to provide for the incorporation of villages,' passed December seventh, one thousand eight hundred and forty-seven, and the several acts amendatory thereof, so far as the same relate to the village of New Rochelle, in the county of Westchester," the original proceedings of incorporation were confirmed, and the powers and jurisdiction of the village, its officers and trustees, were elaborately defined, so that this statute, as from time to time amended by the legislature, contains substantially the organic law of the corporation. Title 5 of the act, relating to the subject of streets and highways (section 2), provides that the trustees of the village are authorized, under certain restrictions and limitations, "to cause streets and avenues to be opened, graded and paved, widened and regulated," within the limits of said village; the expense to be assessed upon the property benefited thereby. The restrictions and limitations above referred to are found in the following section, which seems to condition the exercise of any authority in the matter by requiring, in the first instance, the presentation to the trustees of a petition for the improvement, signed by one-third of the taxable. inhabitants of the village, followed by a publication of a notice of such application, and of the time when the trustees will proceed upon the same. On the day specified in the notice, or as soon thereafter as may be, the trustees "may," as the statute expresses it, "by a resolution decide to allow such improvement to be made," unless, on or before the day specified in said notice, a remonstrance signed by one-third of the taxable inhabitants of the village shall have been presented to them. It will thus be seen that the trustees are without power to act upon the matter on its merits, or to authorize the improvement, until the above prerequisites have been satisfied. It is then, and then only, that they may legislate upon the subject, and, in the exercise of their judgment, either sanction or refuse to sanction such improvement. It is very obvious that they would have no right, before the time for deliberation and final action had arrived, to bind themselves or the village by any agreement to decide the question in any particular way, and especially so in view of the hearing upon the merits which the statute evidently contemplates before the question is decided. They are re-

quired to act upon all the information which they may have received down to the moment of final action, and in the light of such illumination of the subject as the preliminary proceedings and hearing prescribed by the statute may have given, all of which would be impossible if they could in advance legally bind themselves and the village which they represent by such an agreement. Indeed, the general rule is a well-settled one that a legislative body cannot bind itself to legislate in any particular way, nor can it bargain away its right and correlative duty to act whenever the time for legislation may be opportune, and according to whatever the best interests of their constituents may then require. In Dillon on Municipal Corporations (4th Ed., § 97), the learned author says:

"Powers are conferred upon municipal corporations for public purposes; and as their legislative powers cannot, as we have just seen, be delegated, so they cannot, without legislative authority, express or implied, be bargained or bartered away. Such corporations may make authorized contracts, but they have no power, as a party, to make contracts or pass by-laws which shall cede away, control, or embarrass their legislative or governmental powers, or which shall disable them from performing their public duties. The cases cited mark the scope and illustrate the application of this salutary principle in a great variety of circumstances, and, for the protection of the citizen, it is of the first importance that it shall be maintained by the courts in its full extent and vigor."

Again, in the case of Britton v. Mayor, etc., 21 How. Prac. 251, Chief Justice Nelson, in giving the opinion of the court, says (page 255) that it is not within the power of the common council to bind its legislative capacities by any private arrangements or stipulations so as to disable itself from enacting any law that might be deemed essential for the public good, and cites the case of Brick Presbyterian Church of New York v. Mayor, etc., of New York, 5 Cow. 538. Judge Cooley, in the case of Gale v. Village of Kalamazoo, 23 Mich. 344, says (page 354):

"Indeed, it is impossible to predicate reasonableness of any contract by which the governing authority abdicates any of its legislative powers, and precludes itself from meeting in the proper way the emergencies that may arise. Those powers are conferred in order to be exercised again and again, as may be found needful or politic; and those who hold them in trust to-day are vested with no discretion to circumscribe their limits or diminish their efficiency, but must transmit them unimpaired to their successors. This is one of the fundamental maxims of government, and it is impossible that free government with restrictions for the protection of individual or municipal rights could long exist without its recognition."

It is, however, unnecessary to multiply citations of authorities in support of a proposition as well established and unassailable as this. The application of this principle to the case at bar is manifest. There is no special legislative authority to enter into such an agreement as the one under consideration, which has been brought to my attention, and in the absence of such a sanction I can come to no other conclusion than that the defendant's trustees had no power to bind it in any such manner.

The same criticism equally extends to the other stipulations alleged to have been broken with respect to the discontinuance of certain streets or highways. There does not seem to be any pro-

vision in the charter of the village in terms providing for any such discontinuance. It is contended, however, that this may be accomplished in either of the following ways: (1) Under section 82 of the highway law (Laws 1890, c. 568), where it is provided that any person or corporation assessable for highway labor may make written application to the commissioners of highways of the town in which he or it shall reside, or is assessable, to alter or discontinue a highway, or to lay out a new highway. Under the charter of the defendant, the trustees of the latter take the place of such commissioners, and perform the duties devolved upon them within the limits of their territorial jurisdiction. After such application is filed, a petition must be presented to the county court by the applicant, on notice to the trustees, for the appointment of commissioners to determine whether the highway proposed to be discontinued is useless, and, if they so find, to assess the damages occasioned by its discontinuance. The decision of these commissioners is declared to be final, if not vacated or modified by the court. (2) Under the provisions of the general act for the incorporation of villages (Laws 1870, c. 291, tit. 7, § 1, as amended by Laws 1871, c. 870, § 3), which declares that the trustees of such a village shall be commissioners of highways in and for the same, and as such shall have power, among other things, to discontinue roads, avenues, etc. By the terms of chapter 308, Laws 1884, the trustees and officers of any village created by special charter (and the village of New Rochelle seems to come within this definition) are endowed with the same powers "as are prescribed in any general act for the incorporation of villages within this state, except as such special charter may be in conflict with any provision or provisions of said general acts." It has been held under these statutes that nothing more than the passage of a resolution by the trustees is necessary to effect a discontinuance of such road or street. Excelsior Brick Co. v. Village of Haverstraw, 142 N. Y. 146, 36 N. E. 819. Assuming that both of these methods are applicable to the village of New Rochelle, it is plain that efficient action by the trustees could be had only in case of the latter; and if a discontinuance of the streets in question has not already been accomplished by the resolution authorizing the contract, which, for the purposes of this demurrer, we must assume was duly passed, the agreement to accomplish it is open to the criticism that it is merely promissory in its character, and therefore an unlawful attempt to bind the trustees at some future time to the exercise of their political powers in a particular way. The position of the plaintiff, however, is manifestly that a discontinuance has not been accomplished, and that it is necessary that certain legal proceedings should be instituted to reach a result, and the alleged breach of the contract in this regard is the only ground of complaint alleged. This evidently refers to the method of securing a discontinuance first above mentioned, for it is in that case, and in that only, that any such proceedings are required. But it will be observed that in such proceedings the position of the village trustees in the matter is a purely passive one. They have no power to initiate proceedings, nor have they any function to decide the question. That, as

we have seen, rests exclusively with the commissioners appointed by the court. It is claimed, however, that they have bound themselves that these streets shall be discontinued, and they should therefore cause some person or corporation qualified to do so to present the application and initiate the proceedings, and that they had expressly bound themselves to do so by agreeing to cause all legal proceedings to be taken which might be necessary. It is plain, however, that there is no power in or legal duty resting upon the trustees to do this. How can they cause proceedings under this statute to be taken, when by law the duty of so doing rests upon the applicant,—a purely private person, having no official relation whatsoever to the village, and one over whom the trustees have no measure of control? I am unable to assent to the proposition that the trustees are bound to hunt up and induce some one to make the application and to maintain the proceedings for the appointment of commissioners. The law never contemplated any such duty, and none can rest upon them by reason of the contract. The case of Reilly v. City of Albany, 112 N. Y. 30, 19 N. E. 508, in no way resembles the case at bar. There the plaintiff had entered into a contract with the defendant, that was decidedly lawful, for the performance of a public work, which was to be paid for after an assessment had been laid therefor. Such an assessment required the action of the board of contract and apportionment, which was unreasonably withheld. The court held that the members of the board were lawful agents of the city, that the latter was responsible for their omission to perform a duty legally resting upon them, and that the plaintiff was therefore entitled to recover such damages as he had suffered by reason of this neglect. Here the contract to discontinue, in so far as it was executory, was ultra vires, or, assuming it to be free from that objection, the legal proceedings which the plaintiff considers should have been instituted could not be set in motion by the trustees of the village, but only by some private person standing in no possible official relation to the defendant.

The other provisions of the contract on the part of the defendant which are executory in their nature are, I think, affected by the same vice as those which have been under discussion. The defense demurred to is valid, and there must be judgment accordingly, overruling the demurrer, with costs.

Demurrer overruled, with costs.