Argued February 7; affirmed April 3; rehearing denied
May 22, 1934

# WINKLEBLECK *v.* CITY OF PORTLAND

(31 P. (2d) 637)

228

*Frank S. Grant,* City Attorney, and *L. E. Latourette,* Deputy City Attorney, both of Portland, for appellant.

*McDannell Brown,* of Portland, for respondent.

ROSSMAN, J. In the year 1932 the city of Portland desired to widen a thoroughfare in that city known as Fourth Street Extension in the vicinity of its intersection with Gibbs street. At that time the plaintiff was the vendee in a contract, dated August 18, 1925, in which his vendor, Bertha Jones, agreed to convey title to him to the 50 x 100 foot lot situated at the southwest corner of Gibbs and Second streets, at a price of $1,500, payable in installments over a long course of time. Subsequently the vendor's interest passed to Addie M. Marshall. Situated upon the lot was a small house, 35 years old. After his purchase the plaintiff made some improvements to this property costing, according to his testimony, $1,000. Upon some prior occasion the city had acquired 940 square feet off the front of this lot, and now, in order to widen Fourth Street Extension, desired the remainder. Such being its purpose, the city proceeded in the manner outlined in the sections of its charter quoted in *Spencer v. City of Portland,* 114 Or. 381 (235 P. 279), to acquire title. After the city's engineer had reported to the city council that $1,500 was the amount that should

be allowed to the owner of this lot for its taking, the council, on December 1, 1932, after notice of that fact had been given to the plaintiff, and the latter had filed a remonstrance in which he claimed that the amount was insufficient, enacted Ordinance No. 63536, on January 3, 1933, overruling his claim and fixing $1,500 as the value of the property. Some time previously the plaintiff had appointed a Mrs. Turney as his agent to negotiate with the city officials concerning the amount he should be paid. During the course of the above proceedings Mrs. Turney called upon some of the city officials who showed her a map of Fourth Street Extension upon which was indicated all of the property to be taken under the street widening project, including the lot under consideration. This map, although it showed that plaintiff's entire lot was to be condemned, nevertheless indicated that about two-fifths of it, being the westerly or rear part, would be untouched by the widening. Believing that the city did not need this part and that the house could be moved thereon, the plaintiff, on January 13, 1933, in a communication to the council, stated the nature of his interest in the lot, protested that the proposed amount of compensation was insufficient, and suggested that "if you want to give me the land left so I can put my house back, I think we can come to an understanding". This letter was referred to the commissioner of public works who, on January 20, made a report to the council recommending:

"That the title to the house be vested in the former owner, provided (1) that all right of appeal to the circuit court for additional awards of damages be waived; (2) that the house be completely removed from the premises by February 15; and (3) that the owner, Addie M. Marshall, or W. P. Winklebleck, agrees to

hold the city of Portland and all of its officers and agents free from any harm or liability due for damages which might result to persons or property as a result of the wrecking of said building or moving the same."

The report made no suggestion concerning the plaintiff's request for the lot remnant, although it mentioned the fact that the plaintiff desired its return. A copy of this report was mailed to the plaintiff concurrently with its delivery to the city council. In the letter of transmittal the commissioner notified the plaintiff that his time to appeal from the council's award "will expire on January 23 or 24", that the commissioner's report would be considered by the council January 23 at two o'clock p. m., and that the commissioner believed it would be impossible for the plaintiff to acquire the lot remnant. Mrs. Turney testified that on January 21 or 22 she delivered a letter to Mr. E. W. Jones, deputy city auditor, addressed to the city council, stating that the plaintiff would accept the awarded $1,500 if the city would permit the plaintiff to retain the house and release to him the remnant. The auditor is the clerk of the city council. The witness testified that Mr. Jones promised to advise her of the action taken by the council, and that "on the afternoon of January 23, 1933, near five o'clock, I called Mr. Jones on the telephone and asked him what the council did and he answered that the council had given Mr. Winklebleck the house and westerly part of the lot. I then informed Mr. Winklebleck about it". January 23 the council adopted the commissioner's report and thereupon the commissioner presented a proposed ordinance which had previously been prepared by the deputy city attorney, to whom had been given a copy of the report with instructions to prepare an ordinance

in harmony with it. This ordinance was at once en-
acted into law as Ordinance No. 63628, and is as fol-
lows:

"The City of Portland does ordain as follows:

"Section 1. It appearing to the Council that the
owners of Tract No. 17 described in Ordinance No.
63536 are dissatisfied with the damages allowed in the
sum of $1500.00 and threaten an appeal, but a compro-
mise and settlement can be effected if the city pay said
amount and release to the owners of said property the
house located thereon and also release from said pro-
ceedings the westerly portion of said premises, being
the westerly portion of Lot 1, Block 130, Caruthers
Addition, not required for said widening, and it ap-
pearing to the Council that said house would be of
little or no value to the city and that the portion re-
maining of said lot is small and not necessary to said
street widening but was included because it was be-
lieved that the damages would be the same whether all
or a part of said tract be taken; now, therefore, a set-
tlement of said matter is hereby authorized by the
Auditor and the Auditor may pay to the owners of said
premises said amount of $1500.00 upon receiving a
clearance of title, provided that such owner or owners
accept said amount as in full settlement, accord and
satisfaction and waive any right of appeal to the Cir-
cuit Court for additional damages, and agree to re-
move and completely vacate said premises on or before
February 15, 1933, and clear the same from all rub-
bish, and also hold and save harmless the City of Port-
land, its officers, agents and employes from any dam-
ages which may result to persons or property as a re-
sult of continuing in the occupation of said house and
wrecking, removing or otherwise disposing of the
same. A warrant for said consideration may be drawn
and delivered upon the signing by the owner or owners
of a suitable document approved by the City Attorney
as to form containing the provisions above stated, and
upon the execution and filing of such document with
the City Auditor the portion of said lot lying westerly

of said street widening shall be released and discharged from said proceedings. The portion referred to as released from said proceedings is particularly described as, Beginning at the northwesterly corner of Lot 1, Block 130, Caruthers Addition to Caruthers Addition, in the City of Portland, Oregon, and running thence easterly along the south line of Gibbs Street a distance of 27.36 feet to the westerly line of said widening; thence southerly along the westerly line of said widening a distance of 54.21 feet, more or less, to a point on the south line of said lot 48.31 feet easterly of the southwesterly corner of said lot; thence westerly along the southerly line of said lot to the southwesterly corner thereof and thence northerly to the place of beginning.

"Section 2. Inasmuch as this ordinance is necessary for the immediate preservation of the public health, peace and safety of the City of Portland in this: That prompt action is needed in order to effect a settlement of said matter and obtain a place for the application of emergency unemployment relief work at the earliest practicable date; therefore, an emergency is hereby declared to exist and this ordinance shall be in force and effect from and after its passage by the Council.

Passed by the Council Jan. 23, 1933.

Geo. L. Baker,
Mayor of the City of Portland.

Attest:

Geo. R. Funk,
Auditor of the City of Portland.''

The plaintiff testified that on April 23 Mrs. Turney told him "that the city council accepted our proposition and would release the house and westerly portion of the lot and pay $1500.00''. He admitted, however, that he did not obtain a copy of the ordinance for two weeks. January 24 was the last day available for appealing from the $1,500 award. No appeal was taken. The plaintiff testified: "If Ordinance 63628

had not been passed I should not have waived or allowed my appeal to the circuit court to lapse.'' During the week following January 23 Mrs. Marshall was absent from the city, but upon her return the plaintiff effected an arrangement with her whereby, on February 3, a deed from her and her husband was placed in escrow with a Portland bank, accompanied by instructions to deliver it to the plaintiff whenever the unpaid balance of the purchase price of this property ($600) was paid. February 4 Mrs. Turney went to the auditor's office to advise them that a deed from Mrs. Marshall was available and that the transaction could be closed. Here she encountered Mr. Jones who referred her to the aforementioned deputy city attorney who had prepared Ordinance 63628. The latter told her that a mistake had occurred in the drafting of that ordinance, and that, through this mistake, the release of the westerly end of the lot had been authorized. He added that the city would not return this portion of the lot. On or about the same day the plaintiff called upon some of the city officials and was given like information. The deputy city attorney in charge of this matter at the same time informed the plaintiff that he would not prepare any papers to enable the plaintiff to comply with the aforementioned ordinance. February 4 the plaintiff secured from the city building bureau a permit authorizing him to move the house to the lot remnant which he represented as belonging to himself. He then proceeded with the necessary excavations preparatory to moving the house to its new location. February 8 he delivered to the city auditor a deed of conveyance to the city of the aforementioned lot and also a written declaration of compliance with all of the other requirements of Ordinance 63628. Feb-

ruary 9 the city council enacted an ordinance which, after declaring: "It appearing to the council that it was not intended by Ordinance 63628 concerning a settlement with the owner of Tract No. 17 described in Ordinance 63536 to release from the effect of said ordinance any portion of said tract, inasmuch as the whole of said tract will be needed for said Fourth Street widening in order to make a suitable intersection at Gibbs Street; now, therefore, Section 1 of said ordinance is hereby amended to read as follows: * * * ", reenacted Ordinance 63628 except the part which made provision for the return to the plaintiff of the westerly part of his lot. In a letter dated February 10 the auditor returned to the plaintiff his deed pointing out an alleged defect in it, and also pointing out alleged defects in the plaintiff's tender of performance with the other requirements of Ordinance 63628. The letter further stated: "The ordinance which you refer to, namely, No. 63628, contains an error which was explained to you before you obtained any building permit or performed any work and you was then advised, as you was advised before the passage of the ordinance, that the city could not allow you to retain the westerly portion of the lot, nevertheless, you now submit a deed * * *." In order to substantiate its contention that there was erroneously included in Ordinance 63628 the provision for the return of the westerly part of the lot, the defendant called several witnesses, including the mayor and four commissioners, and inquired of them concerning this alleged mistake. After the plaintiff's objections to these questions had been sustained, it made an offer of proof which states that it was never intended that this provision should have been inserted in the ordinance, but that since the

city council was anxious that the ordinance be enacted as speedily as possible, in order to provide emergency employment for the city's unemployed, the draftsman of the ordinance, acting in haste, erroneously included this provision. The offer of proof also stated that only the title of the ordinance was read before its enactment and that, thereby the unintended provision was not discovered. Proof supplied by the defendant indicates that the street widening project needs virtually all of the lot under consideration.

Section 148 of the charter of the city of Portland provides:

"The City of Portland shall not be bound by any contract nor in any way liable thereon, unless the same is authorized by an ordinance and made in writing and signed by some person or persons duly authorized thereunto by the council. But an ordinance may authorize any board, body, officer or agent to bind the city without a contract in writing for the payment of any sum not exceeding Two Hundred Fifty ($250.00) Dollars."

Based upon the contention that Ordinance 63628 constituted an offer to him which he accepted by refraining from appealing from the $1,500 award, and by placing himself in a position to comply with all of its other provisions, the plaintiff claims that a contract was effected between himself and the city whereby he became entitled to receive $1,500, the house and the westerly portion of the lot. He further contends that this contract was breached by the enactment of the ordinance of February 9, and that, hence, he became entitled to recover damages for the failure of the city to permit him to retain the remainder of the lot.

The defendant contends (1) that section 148 of its charter above quoted precludes actions of this character unless the parties have executed a contract, and,

averring that they did not, argues that the plaintiff's cause of action must fail; (2) that if it ever is possible for an ordinance to be a contract, Ordinance 63628 is incapable of being such because, according to the defendant, it is nothing more than a grant of authority to the city auditor to pursue the course of conduct therein outlined; and (3) the plaintiff's tender of performance is insufficient because he never delivered to the city auditor documents bearing the approval of the city attorney.

The first contention which the city urges is that "Ordinance No. 63628 is not a contract because, under section 148 of the charter, a contract with the city cannot be thus made". In support of this contention, it cites *Twohy Bros. Co. v. Ochoco Irrigation District,* 108 Or. 1 (210 P. 873, 216 P. 189); *White v. City of Seaside,* 107 Or. 330 (213 P. 892); *State ex rel. v. Funk,* 105 Or. 134 (199 P. 592, 209 P. 113, 25 A. L. R. 625); *Grafton v. City of Sellwood,* 24 Or. 118 (32 P. 1026); *City of Astoria v. American La France Fire Engine Co.,* 225 Fed. 21; and 3 McQuillin, Municipal Corporations (2d Ed.) sections 1266, 1281 and 1282. The above authorities hold that provisions in charters which place limitations upon the powers granted to municipal officers, which are intended to safeguard the interests of those who dwell within the municipality, are mandatory in character; that a grant of power, the exercise of which is restricted to a specific mode, excludes the exercise of that power in any other manner; that those who deal with the municipality are charged with knowledge of these limitations; that these limitations are equally applicable whether the municipality is exercising a proprietary or governmental power; that all claims against the municipality founded upon any con-

duct which is prohibited by such charter provisions are invalid, whether the basis of the claim is contract, implied liability, estoppel or ratification. None of the above cases concerns itself with the question of whether or not an ordinance can be a contract. We notice, however, that section 1267, McQuillin, Municipal Corporations (2d Ed.) states:

"A proposition or offer made to the proper corporate authorities and an acceptance of the terms thereof by an ordinance constitutes a contract. The ordinance accepting the terms of the proposition constitutes assent to the contract on the part of the corporation, as distinguished from a mere declaration of intention to enter into a contract. So an ordinance granting a right, accepted and acted upon by the grantee, becomes an irrevocable contract. But an ordinance authorizing the mayor to enter into a contract does not of itself create a contract if not acted upon by him."

Dillon, Municipal Corporations (5th Ed.) section 784, states the proposition:

"The authorized body of a municipal corporation may bind it by an ordinance, which in favor of private persons interested therein may, if so intended, operate as a contract; or they may bind it by resolution, or by vote clothe its officers, agents or committees with power to act for it."

From 19 R. C. L., Municipal Corporations, page 1060, section 348, we quote:

"The contracts of a municipal corporation are ordinarily executed and signed by the mayor or other chief executive officer on behalf of the corporation, but it is possible for a contract binding a municipal corporation to be brought into existence by a vote of the municipal council. Thus, an ordinance or resolution which is in effect an offer by a municipal corporation upon acceptance by the party to whom it was addressed becomes a contract."

■ We have read the decisions cited by the writers in support of the above statements and find that they support the text. We believe that the principle stated in the quoted language is applicable to the situation before us, provided Ordinance 63628 is fairly capable of construction as an offer to the owner of the lot to be accepted by compliance with its requirements. In other words, we do not believe that section 148 of the Portland charter precludes the formation of contracts through the instrumentality of an offer made by an ordinance and its acceptance by the performance of the desired act. Recognition of the fact that a contract may be effected in this manner does no violence to the purposes of section 148 which seeks to safeguard the interests of the city against improvident contracts hastily consummated. The enactment of the required ordinance by the city council injects into the transaction the desired deliberation. The specific requirements of section 148 that the contract ''be authorized by an ordinance and made in writing and signed by some person or persons duly authorized thereunto by the council'', it will be observed, are present in a contract effected in the above manner. We, therefore, conclude that this objection of the defendant is without merit.

■ The second objection of the defendant suggests that Ordinance 63628 is not an offer to the owner of the lot in question but is a mere grant of authority to the auditor to pay the owner of the lot $1,500 and permit him to keep the house and the westerly part of the lot when he has done the things required by the ordinance. While it is apparent that the ordinance in part is a grant of authority to the auditor to consummate this transaction, we believe that it also consti-

tutes an offer to the owner of the lot. It is evident that the ordinance did not contemplate that the auditor and the plaintiff should execute some contract before the transaction could be closed; but that the lot owner should demonstrate his right to secure payment of the $1,500 and the release of the westerly portion of the lot by waiving the privilege of an appeal, delivering title, moving the house, and clearing the lot of rubbish. We find no merit in this contention.

 The third contention advanced by the defendant is that the plaintiff was unable to perform the conditions of Ordinance 63628. It will be recalled that the plaintiff permitted the time for appeal from the $1,500 award to pass without availing himself of his right of appeal; that on February 8 he delivered to the auditor a deed to the lot, reserving, however, the contested westerly part of it; that on the same day he delivered to the auditor a document tendering performance with all other requirements of Ordinance 63628; that on February 4 he procured a permit authorizing him to move the house to the westerly part of the lot and at the same time had excavations made for the purpose of moving the house before February 15, that being the limit of time permitted by Ordinance 63628 for the removal. It will also be recalled that after the time for appealing had expired, but before the deed was tendered, the city officials renounced intention of permitting the plaintiff to retain the westerly part of the lot, and that the deputy city attorney to whom was assigned this piece of business declared that he would not prepare any papers to enable the plaintiff to consummate this transaction. Finally, the city enacted the amendatory or repealing ordinance. Thus, it is apparent, if credence is given to the plaintiff's testimony,

that he yielded up his right of appeal before he was apprised of the city's claim that Ordinance 63628 contained an error. The defendant seems to believe that it was necessary for the plaintiff to have filed with the auditor on or before January 24 a document formally waiving the right of appeal, but we are unable to find in the ordinance any support for this contention. Its requirement is that the plaintiff "waive any right of appeal". He abandoned his right by permitting the appeal time to pass without availing himself of the privilege. We find no merit in this portion of the contention, nor do we find merit in the rest of it which criticizes the tender of performance and argues that the plaintiff was unable to perform. It seems reasonably certain that the plaintiff would have complied with all of the requirements of Ordinance 63628 if his efforts had not been thwarted by the city. The latter insists that he failed to prove his ownership of this property at the time when compliance with Ordinance 63628 was necessary. However, he was in possession of the property and was exercising acts of ownership over it. From these circumstances a presumption of ownership in his favor was authorized: Oregon Code 1930, section 9-807, subd. 11 and 12. Next, Ordinance 63628, as we have seen, recites: "It appearing to the council that the owners of Tract No. 17 described in Ordinance 63536 are dissatisfied with the damages allowed in the sum of $1,500.00 and threaten an appeal, but a compromise and settlement can be effected if, the city * * *". Then follows almost the precise proposition which Mrs. Turney, on behalf of the plaintiff, had submitted to the defendant, succeeded by a grant of authority to the auditor to consummate the settlement. The amendatory ordinance enacted on

February 9, 1933, declared: "It was not intended by Ordinance No. 63628 concerning a settlement with the owner of Tract No. 17 described in Ordinance No. 63536 to release * * *." It seems to us that the city, in conducting these negotiations with the plaintiff and in employing the above language concerning him, admitted that he was the owner, or one of the owners, of this property; at least, an inference to that effect is permissible. Further, it will be recalled that the commissioner in charge of this widening project, in his report to the council, previously quoted in part, referred to "Addie M. Marshall or W. P. Winklebleck" as the owners of this property. The escrow papers, to which we have made reference, indicate that the contractual relationship between these two persons was such that upon payment to her of $600 Addie M. Marshall was bound to convey title to the plaintiff. The evidence also indicated that the property was encumbered by the lien of the unpaid taxes for the years 1930 and 1931. (The city was aware of that fact when it instituted the widening proceedings.) The defendant made no effort whatever to prove that the title was vested in any one or in any manner other than as appears from the above. The plaintiff testified, when he handed to Mr. Jones the deed from himself to the city: "I told him that Mrs. Marshall had made a deed to me and left it at the First National Bank in escrow. Mr. Jones said that would be all right. I told him about the unpaid taxes and he said they could be paid out of the $1,500.00. I told Mr. Jones that the ordinance gave me the westerly part of the lot. Mr. Jones said it would be all right to get the deed from the bank. When I talked to Mr. Jones and explained the matter about the title, as I have already stated, he said that

that would be all right." As we have seen, Ordinance 63628 intrusted the consummation of this transaction to the auditor, and, as we have further seen, Mr. Jones was the deputy auditor assigned to this piece of business. It seems to us that the plaintiff was able to comply with the provisions of Ordinance 63628. It will be recalled that the city attorney refused to prepare any of the papers needed for full compliance with the requirements of that ordinance. Hence, it is not in a position to insist that the plaintiff should have tendered "a suitable document approved by the city attorney as to form". The familiar principle presents itself "that if a promisor is himself the cause of the failure of performance either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failue": Williston on Contracts, section 677. See also section 1819. The attitude of the city officials, together with the enactment of the subsequent ordinance which removed from Ordinance 63628 the provision for the release of the westerly part of the lot excused the plaintiff from further tender of performance.

 The defendant argues that the minds of the parties never met because, according to it, Ordinance 63628 erroneously included a provision for the release of the westerly part of the lot. But substantial evidence indicated that the plaintiff was not aware of any purported error in Ordinance 63628 until after he had yielded up his right of appeal, and had thereby accepted the terms of the offer-ordinance. Nothing to the contrary appears. In *Leonard v. Howard,* 67 Or. 203 (135 P. 549), a like contention was found insufficient to prevent the consummation of a contract. The decision stated: "For this carelessness or mistake plaintiff can-

not be held, the mistake not being mutual and no fraud on the part of the plaintiff being charged or proved.'' It is true, as the defendant argues, that the plaintiff did not, before his time for appealing had expired, notify the city that he accepted the offer contained in Ordinance 63628, and that he would waive his right of appeal. But we believe that the ordinance did not contemplate that acceptance should be manifested by an oral or written expression, but by conduct. The fact, that the plaintiff abandoned his appeal right and at once proceeded to do the things which the ordinance required done, we think constituted acceptance in the manner which the city desired.

We have considered all other assignments of error argued in the briefs, and, without making specific mention of the means whereby we came to our conclusions, state that we find them lacking in merit.

■ Before concluding our disposition of this controversy, we add that we have not made a complete statement of the evidence; that is, we have omitted for the most part the city's version of the contested issues of fact. Since the jury apparently accepted as true the plaintiff's version of the disputed facts, we have been compelled to do so ourselves. The testimony of Mrs. Turney and of other witnesses called by the plaintiff was contradicted by several of the employees of the city who have long served it in a creditable manner. But, as before stated, we are bound by the jury's disposition of the evidence.

It follows from the above that the judgment of the circuit court is affirmed.

RAND, C. J., and BEAN, BELT, KELLY, CAMPBELL and BAILEY, JJ., concur.