Argued October 9; reversed November 12, 1946

# MORRIS *v.* CITY OF SALEM ET AL.

### (174 P. (2d) 192)

GEORGE R. DUNCAN, Judge.

*Lawrence N. Brown,* City Attorney, of Salem, for appellants.

*Chris. J. Kowitz,* of Salem, for respondent.

HAY, J.

In this suit plaintiff, a resident and taxpayer of the City of Salem, sought to enjoin the city, its mayor and recorder from entering into and performing a contract for the purchase and installation of parking meters upon certain streets in the business district of said city.

On May 2, 1939, the common council adopted an ordinance for the regulation of traffic upon the city streets, establishing parking-meter zones, and providing for the installation and operation of parking meters. On October 15, 1945, the council adopted a resolution authorizing the mayor and recorder, on behalf of the city, to execute a contract between the city and Michaels Art Bronze Company, Inc., provid-

ing for the installation of parking meters upon certain streets for an experimental period of six months, at an agreed rental, with an option to the city to purchase the meters at the expiration of the six months' period. Fifty per cent of the moneys derived from the operation of the meters was to be paid to the meter company as rental and, in the event that the city should exercise its option to purchase, was to be credited upon the purchase price, the remainder to be paid by continued application thereto of fifty per cent of the income of the meters.

The fiscal year for municipal corporations begins on the first day of July and ends with the thirtieth day of June. The complaint herein was filed November 28, 1945. It alleged, and it is admitted, that the city was then about to enter into the contract above mentioned. We must assume, therefore, that it was the intention of the city that parking meters should be installed immediately and should be in operation during a considerable part of the fiscal year 1945-1946. It alleged further that the proposed contract was invalid, for reasons hereinafter discussed.

The defendants filed a general demurrer to the complaint, which demurrer was overruled. Thereupon they filed an answer, which was, in effect, an admission of the major allegations of the complaint coupled with a denial of the invalidity of the proposed contract. The plaintiff thereupon moved for judgment in his favor upon the pleadings and, upon such motion, the court entered a decree perpetually enjoining the defendants as prayed for. Defendants appeal.

The principal ground upon which defendants rely in seeking a reversal of the decree is that the court erred in overruling their demurrer to the complaint.

■ Plaintiff contended that the city has no right to install parking meters. Such right, however, has been sustained generally throughout the United States, and by this court in *Hickey v. Riley,* 177 Or. 321, 162 P. (2d) 371, wherein the authorities are collated.

■ Plaintiff maintained, further, that, by the proposed contract, the city would lend its credit to or assist a private corporation within the meaning of the prohibition contained in Article XI, section 9, Oregon Constitution. This article of the constitution was intended to prevent the investment of public funds in private enterprises. *Johnson v. School Dist. No. 1,* 128 Or. 9, 270 P. 764, 273 P. 386. There is nothing in the proposed contract, however, which contemplates that the city shall invest public moneys for the benefit of the meter company. Under the ordinance and resolution, the city had specific authority to install parking meters. It was within the power of the city, moreover, to purchase the meters and to finance such purchase out of the revenue to be derived from their use. *Hendricks v. Minneapolis,* 207 Minn. 151, 290 N. W. 428, 430.

■ The plaintiff suggests that the experimental period provided for in the contract is an unlawful scheme to enable the company to profit through being permitted to use the city streets for the purpose of demonstrating and selling its meters. This argument, if sustained, would have the effect of debarring a municipal corporation from purchasing, subject to approval after due trial, any street equipment whatever. Title to the meters, it is true, is reserved in the company until they are paid for. The city, however, has full control of their operation and of the collection and disbursement of the income. There is no grant of

any easement or privilege in favor of the meter company in respect of the use of the public streets. The argument is patently unsound.

■ Plaintiff suggests that the installation of a parking meter in front of his premises will constitute a taking of his property without due process of law. In *Hickey v. Riley,* supra, we held that the parking of vehicles upon city streets is a privilege which may be granted by municipal corporations as an incident to the right of travel. It would seem that what plaintiff's claim amounts to in this respect is that he has a right of continuous and uninterrupted access to his property, not only from the sidewalk but from the street itself. He maintains that he is entitled to such access, to be exercised through the parking, or through the loading or unloading, of his own vehicles, or those of persons having business or social relations with him, at the sidewalk curbing in front of his premises, at any time, in preference to parking by the vehicles of members of the general public. He has no such rights. The streets of the city are primarily ways for public travel, and the public right of travel includes the privilege of parking for reasonable periods. *Hickey v. Riley,* supra. Without the privilege of parking as the reasonable exigencies of business or social intercourse may require, the right to use city streets for the purposes of travel would be so restricted as to be of little benefit to the public. Plaintiff's rights in these respects are no greater than those of any other member of the public, except that he has the additional right of reasonable ingress and egress to and from his own property.

■ The original dedication of the street in front of plaintiff's property for street or highway purposes

subjected it not only to the ordinary usages of travel then prevailing, but also to such additional usages as might, from time to time, be demanded by changing conditions of society, increased population, or improved methods of transportation. *McClintock v. Roseburg,* 127 Or. 698, 700, 273 P. 331; *Hickey v. Riley,* supra. Such additional usages do not impose additional servitudes upon the land, nor do they constitute a taking of plaintiff's property without due process of law. *Andrews v. Marion,* 221 Ind. 422, 47 N. E. (2d) 968; *Wilhoit v. Springfield,* 237 Mo. App. 775, 171 S. W. (2d) 95; *William Laubach & Sons v. Easton,* 347 Pa. 542, 32 A. (2d) 881, 883; *Foster's, Inc. v. Boise City,* 63 Idaho 201, 118 P. (2d) 721; *Burns v. Enid,* 92 Okla. 67, 217 P. 1038; 25 Am. Jur., Highways, section 135. The maintenance of a parking meter in front of plaintiff's property, while not a direct encroachment thereon, will nevertheless impair his use of the property to some extent. This, however, is not a taking within the meaning of the constitution. *Willamette Iron Works v. O. R. & N. Co.,* 26 Or. 224, 227, 37 P. 1016, 29 L. R. A. 88, 46 Am. St. Rep. 620. All that the plaintiff is entitled to beyond the rights which he shares with the public generally is the right of reasonable access to his property, and such right will not be interfered with unreasonably by the installation of a parking meter. *Hickey v. Riley,* supra.

Oregon authorities cited by plaintiff in this connection, including *Lowell v. Pendleton Auto Co.,* 123 Or. 383, 261 P. 415; *Tooze v. Willamette Valley S. Ry. Co.,* 77 Or. 157, 150 P. 252, and *Kurtz v. Southern Pacific Co.,* 80 Or. 213, 155 P. 367, involved the erection or maintenance within streets or highways of structures which materially interfered with the rights of

the owners of adjoining property to reasonable access thereto. The maintenance of such structures is uniformly held not to be within the original dedication of the streets, but none of the cited authorities is applicable to the factual situation involved herein.

■ Plaintiff says that, by entering upon the proposed contract, the city would surrender its right to legislate with reference to the parking of vehicles on the streets within the parking zones, or would embarrass itself in its exercise thereof. His argument is that the contract obliges the city to maintain the meters and exact parking fees for a period of at least six months. The regulation of traffic, including the parking of vehicles, is an exercise by the city of its police powers. If, during the experimental period, the city council should determine that the continued operation of the parking meters was contrary to the public safety or welfare, plaintiff maintains that it would be unable to discontinue such operation without violating its contract with the meter company.

■ The council must remain free to legislate in the exercise of the police power in such manner as appears to be best for the public welfare. 1 McQuillin, Municipal Corporations, 2 ed., Rev. vol. 1, section 393, p. 1097-8; idem, Rev. vol. 3, section 1271; *Aven v. Steiner Cancer Hospital, Inc.,* 189 Ga. 126, 5 S. E. (2d) 356; *New York, N. H. & H. R. Co. v. New Rochelle,* 60 N. Y. Supp. 904, 29 Misc. Rep. 195; *Pearson v. Twohy Bros.,* 113 Or. 230, 240, 231 P. 129, 36 A. L. R. 1113; *Ottumwa Ry. & Light Co. v. Ottumwa,* (Iowa) 178 N. W. 905; *Mott v. The Pennsylvania Railroad Co.,* 30 Pa. St. 9, 72 Am. Dec. 664; *Helena Etc. Ry. Co. v. Helena,* 47 Mont. 18, 130 P. 446; *Peru v. Gleason,* 91 Ind. 566, 575; *State ex rel. v. Board of Park Commissioners,* 100 Minn.

150, 110 N. W. 1121, 9 L. R. A. (N. S.) 1045; *Wills v. Los Angeles,* 209 Cal. 448, 287 P. 962, 69 A. L. R. 1044; *Goszler v. Georgetown,* 6 Wheat. 593, 5 L. Ed. 339; *Vandalia R. Co. v. State ex rel. South Bend,* 166 Ind. 219, 76 N. E. 980, 17 Am. St. Rep. 370; 43 C. J., Municipal Corporations, section 213; 25 Am. Jur., Highways, section 258; 37 Am. Jur., Municipal Corporations, section 121; 2 Elliott, Roads and Streets, 4 ed., section 939. The city of Salem, under its charter powers, has the right to regulate the use of its streets. Charter, section 6, subdivisions 31 and 41. The installation of parking meters is not a bartering away or surrendering of the city's police power. On the contrary, it is an exercise of that power. The meters perform the work which otherwise is performed by policemen. Notwithstanding its agreement to install and operate the parking meters for an experimental period of six months, if, during that period, the council deemed it conducive to the public safety or welfare to remove the meters, it would have a right, in the exercise of its inalienable police power, to do so. The authority to exercise the police power in the interests of the public safety and welfare is implied in the contract. McQuillin, Municipal Corporations, 2 ed., Rev. vol. 3, section 940; *Walla Walla v. Walla Walla Water Co.,* 172 U. S. 1, 43 L. Ed. 341, 19 S. Ct. 77; *Hudson C. W. Co. v. McCarter,* 209 U. S. 347, 52 L. Ed. 828, 28 S. Ct. 529, 14 Ann. Cas. 560; *Northern Pac. Ry. Co. v. Duluth,* 208 U. S. 582, 52 L. Ed. 630, 28 S. Ct. 341; *Chicago & N. W. Ry. Co. v. Chicago,* 140 Ill. 309, 29 N. E. 1109. For the good faith exercise of its governmental powers, such as the police power, the city is not liable in damages as for a tort. 38 Am. Jur., Municipal Corporations, sections 572, 578; McQuillin, Municipal Corporations, 2 ed. Rev. vol. 6,

676

section 2793; *Hise v. North Bend,* 138 Or. 150, 157, 6 P. (2d) 30; *Humphry v. Portland,* 79 Or. 430, 443, 154 P. 897. The meter company is bound to take notice that the authority of the city to enter into the proposed contract is restricted by the limitation inherent in the police power. Cf. *Winklebleck v. Portland,* 147 Or. 226, 236, 31 P. (2d) 637. The contract, therefore, is not invalid in this respect.

 It is argued that the proposed contract is illegal, in that it provides for an expenditure of public moneys and creates a debt or liability in excess of the debt limitation of the city charter. Section 23 of the charter provides that no debts shall be contracted by the city in excess of the estimated revenue, except in cases of emergency or unforeseen calamity, in which cases the council is authorized to borrow or to issue bonds in a sum not exceeding $20,000 to meet such emergency or calamity. The pleadings admit that no emergency exists in the present instance.

The plaintiff takes the position that, even if no debt will be created by the contract within the purview of the charter prohibition, nevertheless, if the council should breach the contract by refusing to operate the meters before they are fully paid for, the city would be liable in damages. *Brewster v. Deschutes County,* 137 Or. 100, 1 P. (2d) 607; *Winklebleck v. Portland,* supra (147 Or. 226, 31 P. (2d) 637). The general rule is that the purchase of property by a city, to be paid for solely out of income to be derived from the property purchased, does not create a debt or liability in violation of constitutional, statutory or charter limitations. *Bowling Green v. Kirby,* 220 Ky. 839, 295 S. W. 1004, 1006; *Kasch v. Miller,* 104 Ohio 281, 135 N. E. 813; *Bell v. Fayette,* 325 Mo. 75, 28 S. W. (2d) 356; *Jones*

*v. Corbin,* 227 Ky. 674, 13 S. W. (2d) 1013; 38 Am. Jur., Municipal Corporations, sections 468, 469, 471; Anno.; 72 A. L. R. 687, at p. 688; 100 A. L. R., 900, at p. 901; 112 A. L. R., 278, at 279; 146 A. L. R., 328, at p. 332; *Joilet v. Alexander,* 194 Ill. 457, 62 N. E. 861, 863; *McGuinn v. High Point,* 217 N. C. 449, 8 S. E. (2d) 462; 128 A. L. R. 608; *Edwardsville v. Jenkins,* 376 Ill. 327, 33 N. E. (2d) 598, 134 A. L. R. 891; *McClain v. The Regents of the University,* 124 Or. 629, 636, 256 P. 412; *Shainwald v. Portland,* 153 Or. 167, 186, 55 P. (2d) 1151; *Moses v. Meier,* 148 Or. 185, 189, 35 P. (2d) 981; *Cascade Locks v. Carlson,* 161 Or. 557, 90 P. (2d) 787; *Winston v. Spokane,* 12 Wash. 524, 41 P. 888; *Foster's, Inc. v. Boise City,* supra (63 Idaho, 201, 118 P. (2d) 721); *Underwood v. Fairbanks, Morse & Co.,* 205 Ind. 316, 185 N. E. 118. There are only a very few cases which hold contrary to the "special fund" doctrine above set forth, among which are *Feil v. Coeur D'Alene,* 23 Idaho 32, 129 P. 643, 43 L. R. A. (N. S.) 1095, and *Williams v. Emmett,* 51 Idaho 500, 6 P. (2d) 475. The contract is subject to the criticism that, while it provides that payment for the meters is to be made by the application thereto of fifty per cent of the income to be derived from their use, it does not expressly limit the city's obligation to that method of payment and repudiate any construction which would impose a general obligation upon the city in the premises. Nevertheless, we construe it as limiting the city's obligation to payment out of revenue to be derived from operation of the meters. Cf. *Public Market Co. v. Portland,* 171 Or. 522, 564-5, 130 P. (2d) 624, 138 P. (2) 916.

 Even under the special fund doctrine, however, if the city has contracted to take the steps necessary to create the special fund from which payment is

to be made, there is an obligation upon its part to take such steps in due course. If it should fail or refuse to do so, such failure or refusal might impose a general liability upon the municipality regardless of the limitations of its charter. The liability in such cases sounds in tort rather than in contract. If, for example, in the case at bar, the city of Salem, not in the reasonable exercise of its police power, but arbitrarily, should refuse to continue to maintain and operate the meters until such time as sufficient revenue had been derived therefrom to pay the purchase price, then a liability might be imposed upon it for damages *ex delicto*. *Public Market Co. v. Portland,* supra, and authorities cited therein; *Reconstruction Finance Corp. v. Municipal Bldg. Corp.,* 63 F. Supp. 587, 589. It is to be presumed, however, that, in performing the contract, the council will act in good faith. We construe the contract as being a valid one within the "special fund" category.

■ Plaintiff further attacks the validity of the contract in that, whereas the ordinance only authorizes the city to purchase meters, the contract provides for renting them. We think that the contention is not well taken. The ordinance (section 3) authorizes the mayor and the city recorder to provide for the "purchase and/or installation of parking meters". The wording, we think, is broad enough to include rental as well as purchase.

Another ground of illegality which the plaintiff urged was that the defendants, not having complied with the provisions of the local budget law (sections 110-1201 to 110-1215, O. C. L. A.), by including within the city's annual budget an estimate of the probable income and expenditures involved in relation to the

purchase and operation of the parking meters, lacked authority to enter into the proposed contract.

■ The complaint alleged that the plaintiff is a taxpayer of the city of Salem, and that, by the installation of parking meters in the city streets, he and others similarly situated will suffer great and irreparable loss, injury and damage. This general allegation of injury is, of course, a mere conclusion.

■ In so far as the failure of the city to budget the items in question is concerned, it is held (although there is authority to the contrary) that it is essential to a taxpayer's right to such relief as is demanded herein that he should allege and prove that the commission of the threatened acts will have the effect of increasing his burden of taxation. High, Injunctions, 4th ed., vol. 2, section 1560; 32 C. J., Injunctions, section 408; 43 C. J. S., Injunctions, section 111; *Brockman v. Creston*, 79 Iowa 587, 44 N. W. 822; Pomeroy's Eq. Jur., 4th ed., section 1767, p. 4102, note; *Crampton v. Zabriskie*, 101 U. S. 601, 11 Otto 601, 25 L. Ed. 1070; *Carman et al. v. Woodruff*, 10 Or. 133, 138; *State ex rel. v. Lord*, 28 Or. 498, 507, 43 P. 471, 31 L. R. A. 473; *Bellarts v. Cleeton*, 65 Or. 269, 272-3, 132 P. 961; *McKinney v. Watson*, 74 Or. 220, 223, 145 P. 266; *Bell v. Plattville*, 71 Wis. 139, 36 N. W. 831, 834; *New York, N. H. & H. R. Co. v. Wheeler*, 72 Conn. 481, 45 A. 14, 18; *Cassidy v. Waterbury*, 130 Conn. 237, 33 A. (2d) 142, 146. In *State ex rel. v. Lord*, supra, it was held, in effect, that in this sort of case plaintiff must plead special injury or damage to entitle him to equitable relief, and that, if he fails to do so, his complaint is vulnerable to general demurrer.

Moreover, despite the division of authority above noted, it is unanimously held that, at the least, the

taxpayer must plead and prove that the threatened actions of the defendants probably will result in a general increase in taxation. McQuillin, Municipal Corporations, 2d ed., Rev. vol. 6, section 2751; *Maxwell v. Smith*, 87 Wash. 629, 152 P. 530, 531. The complaint herein contains no showing of probable injury in this connection, either to plaintiff or to taxpayers generally.

We are of the opinion that the demurrer to the complaint herein should have been sustained. The decree appealed from is reversed, without costs to any party. As it does not appear that the complaint can be so amended as to state a cause of suit, the cause is remanded to the trial court with directions to enter a decree in favor of the defendants.