Submitted on record and appellant's brief on August 17, affirmed November 8, 1977

# CONTINENTAL CONSULTANTS, INC., *Appellant,*

## *v.*

## ROUNDS et ux, *Respondents.*

## (No. 45974, SC 25017)

570 P2d 1187

Marvin O. Bolland, of Eichsteadt, Bolland and Engle, Woodburn, filed the brief for appellant.

No appearance for respondents.

Before Denecke, Chief Justice, Holman, Tongue, Howell, Bryson, and Lent, Justices, and Gillette, Justice Pro Tempore.

GILLETTE, J., Pro Tempore.

**GILLETTE, J.,** Pro Tempore.

This is an action for the repayment of money advanced by one joint venturer to another. Plaintiff, Continental Consultants, Inc., as assignee to the right to collect those sums, appeals an adverse judgment in which the trial court, sitting without a jury, found that there had been a failure to prove the existence of the debt in the amount claimed and that there was a failure to show consent to the assignment. This appeal has been submitted on the record of the proceedings below and on the plaintiff's brief.

Plaintiff's assignor, National Guaranty Properties, Inc., and defendant Wesley R. Rounds entered into a joint venture agreement in November, 1973, for the design and construction of nursing homes for subsequent lease or sale. Defendant was to serve as designer and supervisor for any projects undertaken by the venturers. In fact, only one project, the Lebanon Convalescent Center, has been completed under the agreement. A second agreement, a memorandum, was entered into by the parties in January of 1974. It amended some of the terms of the joint venture agreement as it applied to the construction and disposition of the Lebanon project.

During the construction of the Lebanon project, National Guaranty made regular advances to the defendant to help him meet living expenses. These advances were made in part against defendant's interest in anticipated proceeds from sale of the Lebanon Convalescent Center. In May, 1975, National Guaranty assigned its interest in the repayment of those funds to plaintiff. Plaintiff argues that the money is now due.

The relevant provisions of the agreements are set out below. The joint venture agreement states:

"* * * * *.

"Whereas, the parties desire to join together to form a joint venture for the purpose of developing nursing home

[ 387 ]

and/or convalescent hospital projects and in furtherance of said agreement to joint venture said projects, the Parties agree as follows:

"* * * * *.

"7. Designer's Contract. It is agreed that the venture will sign a design contract with Rounds on a standard AIA Owner-Architect Contract, which shall provide for a fee to the designer in an amount equal to five per cent (5%) of the cost of construction and kitchen and laundry equipment, which fee shall include services of the designer in preparation of all plans and specifications, securing building permits and supervision of all construction projects.

"* * * * *.

"10. Reimbursement. It is agreed that Rounds owes and will reimburse National Guaranty all monies paid to Rounds as advances, at least fifty per cent (50%) thereof out of the first available designer funds outlined in Paragraph 7 on the first project, at least twenty-five percent (25%) thereof on the second, and the balance on the third project. Travel expenses and other costs will be paid by the Joint Venture out of joint venture profits.

"* * * * *.

"14. Nonassignability. No interest in the venture or in the properties owned by the venture shall be transferred or assigned in whole or in part by either party without the written consent of the other.

"* * * * *."

The January 8, 1974 memorandum agreement states:

"* * * * *.

"2. It is agreed that notwithstanding the provisions of the Joint Venture Agreement dated November 19, 1973 between National Guaranty Properties, Inc. and Wesley R. Rounds as joint venturers, forming a venture under the name of Pacific Real Facilities, that the following terms shall control for the Lebanon Convalescent project, and said project only:

"* * * * *.

[ 388 ]

"b. The parties intend to sell said project during the course of construction or as soon thereafter as practicable.

"c. In lieu of all fees in connection with said project, upon sale, the net proceeds of said sale in excess of all costs or obligations of development incurred to closing of said sale, will be disbursed as follows:

"* * * * *.

"(2) To Wesley R. Rounds, in lieu of fees including design fee, 36%.

"* * * * *.

"4. It is further agreed that Wesley R. Rounds shall remit from his fees which may be due him under the provisions of Paragraph 2, above, to National Guaranty Properties, Inc., on his account payable to National Guaranty at least one-half of the $14,050.00 balance due thereon as of December 28, 1973, or the sum of $7,025, plus the full amount of any moneys advanced or additions to said account made after December 28, 1973. * * *.

"* * * * *.

"6. All provisions of the Joint Venture Agreement of Pacific Health Facilities, dated November 19, 1973, not specifically modified herein as to this Lebanon project only, shall remain in full force and effect.

"* * * * *."

The assignment agreement between National Guaranty and plaintiff states:

"*ASSIGNMENT AND HOLD HARMLESS*

"In consideration of this agreement by Continental Consultants * * * I hereby convey, assign, sell, transfer and set over unto Continental Consultants, Inc., a California corporation, all my right, title, and interest in funds owed to me by Wesley R. Rounds, as evidenced by paragraph 4 of the January 8, 1974, memorandum attached hereto as Exhibit C * * *."

The joint venture agreement expressly forbids the assignment of any interest in the venture without the consent of the other party. The agreement depends substantially upon the personal relationship of the

[ 389 ]

parties and therefore the assignment of an "interest" in the venture could upset the working relationship of the ventures. Plaintiff argues that the debt in question is not an "interest" of the joint venture since it is not an interest or debt owing to the joint venture as a whole. The funds advanced to defendant Rounds were advanced by National Guaranty, not by the joint venture. The fact that the source of repayment was to be in part funds realized from the venture does not convert Rounds' debt into an "interest" of the venture.

■ We agree with plaintiff. The assignment to plaintiff in this case is not the assignment of an interest in the joint venture. It is an assignment of the right to collect money owed by one party to another under a separate contract, the terms of which happen to be found in paragraph 4 of the January 8, 1974 modification of the joint venture agreement.

■■ But we cannot agree with plaintiff's contention that the debt is now due. The two agreements state that the remittance of the advances is to be made out of income defendant receives from the sale of the Lebanon project and from income arising from subsequent joint venture projects. The only project ever completed under the joint venture agreement, the Lebanon home, has never been sold. Plaintiff first argues that the sale of the home was not intended as a condition precedent to the obligation to repay the advances, but rather that the sale was intended merely to provide a convenient time for repayment. When a time or condition of repayment is so designated the debt becomes due after a reasonable period of time even if the agreed to conditions of repayment (here, the sale of the Lebanon home) do not come to pass. *Branch v. Lambert,* 103 Or 423, 437, 205 Pac 995 (1922); *Noland v. Bull,* 24 Or 479, 483, 33 P 983 (1893). In *Mignot v. Parkhill,* 237 Or 450, 457-58, 391 P2d 755, 759 (1964) we stated that where specified funds, from which repayment of a debt is to be made, never materialize the debt will be due within a reasonable time after the funds should have

been realized. Plaintiff claims that a reasonable time for repayment has passed such that the entire debt is now due although the Lebanon project has not yet been sold.

In this case there is evidence from which the trial court could have concluded that a reasonable period for repayment of the advances had not yet elapsed. The language of both the joint venture and the memorandum agreements indicates in unambiguous terms that the *existence* of defendant's obligation to repay the debt is not conditioned upon the sale of joint venture projects. But the parties intended the joint venture to be an ongoing relationship spanning several projects. The advances were an important factor in the relationship because they were necessary for defendant to be able to perform his role as designer for the Lebanon project. The remittance schedules of both the joint venture and the memorandum agreements only required partial remittance by defendant from his proceeds from the Lebanon project, the balance to come from later projects. The parties thought that to require full repayment so soon would be too onerous. Plaintiff would have defendants' liability greater under adverse circumstances than it would have been had all gone as the venturers hope. We will not give their agreement such an unreasonable construction.

■ Plaintiff alternatively argues that at least a portion of the debt should now be due because Rounds refused to agree to a proposed sale of the Lebanon home. *See Winklebleck v. City of Portland,* 147 Or 226, 242, 31 P2d 637 (1934). There was evidence that defendant refused to accept one offer to buy the home to which National Guaranty had been agreeable, but no evidence produced by either party required the trial court to find that the refusal was unreasonable. Nothing in the agreement prevents either venturer from reasonably refusing to accept an offer for the purchase of the home.

[ 391 ]

Plaintiff has failed to carry the burden of showing that defendant unreasonably prevented the sale of the home.

Under the terms of the agreements of the joint venturers defendant was not, at the time judgment was entered in this case, obligated to repay the advances.

Affirmed.